721 F.2d 59
 Fed. Sec. L. Rep. P 99,549
Elfriede MAYER, Plaintiff-Appellant,
v.
OIL FIELD SYSTEMS CORP., Integrated Energy, Inc., Burton
Joel Ahrens and "John Doe" fictitious, the true name or
names of such defendants being presently unknown to the
plaintiff, Defendants-Appellees.
 No. 1390, Docket 83-7109.
 United States Court of Appeals,
Second Circuit.
 Argued June 13, 1983.
Decided Oct. 31, 1983.
 
 Jules Brody, New York City (Stull, Stull & Brody, New York City), for plaintiff-appellant.
 Leonard J. Colamarino, New York City (Arthur H. Christy, Christy & Viener, New York City), for defendants-appellees Oil Field Systems Corp. and Burton Joel Ahrens.
 Brian J. Gallagher, New York City (Barry P. Levenfeld, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City), for defendant-appellee Integrated Energy, Inc.
 Before FRIENDLY, KEARSE and CARDAMONE, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Plaintiff Elfriede Mayer (Mayer) appeals from a judgment of the District Court for the Southern District of New York, Robert W. Sweet, Judge. The order dismissed an amended complaint which alleged violations of Secs. 11 and 12(2) of the Securities Act of 1933, Sec. 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 of the Securities and Exchange Commission, and common law fiduciary duties, because of failure to state claims under the federal securities laws on which relief can be granted. Mayer filed the suit as a class action on behalf of all persons who held interests in certain limited partnerships in which defendant Oil Field Systems Corp. (OFS) was a general partner, which had been exchanged for shares of defendant Integrated Energy, Inc. (Integrated) pursuant to an exchange agreement between OFS, the controlling general partner of such partnerships, and Integrated. For simplicity we shall generally treat the case as if plaintiff was suing simply on behalf only of herself and the limited partners of two partnerships in which she was a limited partner. Named as defendants, in addition to OFS and Integrated, were Burton Joel Ahrens, the president of OFS, and "John Doe" defendants who were characterized as the general partners of other limited partnerships who joined in the scheme to defraud limited partners which plaintiff claimed OFS and Integrated had perpetrated against her.
 
 
 2
 The allegations of Count 1 of the amended complaint[1] are as follows: Mayer had purchased for an unstated sum limited partnership interests in the Mark Energy 1979 Indiana County Drilling Program and the Mark Energy-OFS 1980 Year-End Indiana County Area Drilling Program, two of several limited partnerships (the Mark Energy Partnerships) in which OFS was the general partner. The limited partnership agreements provided that the limited partnership interests would be repaid in full before the general partners would receive "a profit or other consideration or emolument from the liquidation or other disposition of limited partners' Interests." Only after the "pay-back" to the limited partners were the general partners "to receive any additional consideration and/or profit from the limited partnerships or from the liquidation or other disposition of limited partners' Interests." Defendants planned and schemed to circumvent these provisions by fixing a value of $10 per share for the Integrated shares to be received by the limited partnerships, "a value that Integrated shares did not have as defendants well knew", in order to generate a "pay-back" whereby the general partners in the exchange would receive shares to which they were not entitled. Integrated participated in this scheme since it received "a schedule of shares to be distributed from the general partners" and knew from this and other data "that the limited partners had received only a small return on their investments." "On the basis of the material, dramatic and artificially inflated value of Integrated shares to $10 per share, defendants wrongfully created the illusion of a pay-back of the investments of the plaintiffs and others similarly situated and the defendant general partners did thus wrongfully share in the exchange of limited partnerships for Integrated shares by an accelerated payout to the general partner defendants", all of which the defendants omitted to disclose in the Prospectus and Prospectus Supplement and the Registration Statement filed with the SEC by Integrated, which the defendants disseminated to the plaintiff and other limited partners. To the contrary, defendants caused to be distributed to the limited partners correspondence containing false and misleading statements or material omissions. The only correspondence cited was a letter from defendant Ahrens which made the statement quoted in the margin.[2] This was alleged to be false and misleading in that Bache was not an underwriter but simply the manager of Integrated's offering. Also the statement and inference that the Integrated shares would "zestily rebound" was erroneous and misleading in that defendants knew that the value of the shares did not approach $10. By reason of the foregoing the shares of Integrated were falsely registered and the exchanges were wrongfully made in violation of Secs. 11 and 12(2) of the Securities Act of 1933, Sec. 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5. Plaintiffs offered to return their Integrated securities pursuant to Sec. 12(2) of the 1933 Act, and demanded recission and/or damages for themselves and for the class they sought to represent. A second count alleged that the recited acts constituted violations of defendants' common-law fiduciary duties.
 
 
 3
 Integrated then filed a "reply memorandum" supporting its previous motion to dismiss the original complaint and an affidavit of counsel, see supra note 1. The affidavit stated that while Integrated's motion was based "entirely on legal grounds", it was "necessary to examine the documents pursuant to which the securities were issued in order to understand plaintiff's pleadings which refer to those documents but do not attach them." These documents were Integrated's Prospectus dated March 24, 1981, its Prospectus Supplement dated September 11, 1981, and the final form of the Registration Statement, filed with the SEC on September 11, 1981. Defendants OFS and Ahrens also filed a "Reply Memorandum in Support of Motion to Dismiss Complaint" accompanied by a "reply affidavit" of Ahrens, attaching excerpts from the Mark Energy Partnership Agreements and also making a number of factual statements.
 
 
 4
 The district court dismissed the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Mayer lacked standing to sue under the federal securities laws. Evidently the court did not rely on factual claims made in Ahrens' reply affidavit as indeed it could not without running afoul of the applicable Federal Rules of Civil Procedure. Rule 12(b)(6) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). Rule 56, in turn, requires the court to give parties at least ten days notice of conversion of a Rule 12(b)(6) motion in order that they may present relevant materials. Fed.R.Civ.P. 56(c). See, e.g., Beacon Industries v. Menzies, 715 F.2d 757, at 767 (2 Cir.1983). Although approximately ten weeks elapsed between the filing of the reply affidavits and the district court's dismissal of the amended complaint, thus affording Mayer ample opportunity to challenge the statements contained therein, Mayer had no occasion to respond to the affidavits in view of the lack of notice of "conversion" of the motion from one addressed to the complaint into one for summary judgment, and in the district court's view of the case it had no need to resort to the affidavits. In this court the appellees, while defending the district court's action on the ground on which it was placed, assert other grounds as well. In order to understand these we will recount material in the affidavits to illuminate the areas of debate, although for the reason indicated we cannot properly rely on them when they run counter to the amended complaint unless, as in the case of documents such as the partnership agreements and the Prospectus, they are incontrovertible.
 
 
 5
 The story, as constructed on this basis, is as follows: OFS served as the general partner for numerous limited partnerships engaged in the business of exploring for, developing, and exploiting oil and gas properties. The Mark Energy Partnerships, which were formed under Pennsylvania law, were two of the OFS limited partnerships.
 
 
 6
 The partnership agreements provide that the general partner is exclusively to manage and control the business of the partnership and make all decisions affecting their affairs. Article X, containing the "Rights and Obligations of Limited Partners", provides that no limited partner shall take part in the management of the partnership's affairs or transact any business for the partnership. Sometime during 1981 representatives of Integrated approached OFS, as they did many other similar limited partnerships, regarding the possible exchange of oil and gas properties owned or leased by the limited partnerships in return for shares of Integrated. It was explained that Integrated was a newly formed company which planned to acquire extensive oil and gas properties from companies already in operation which Integrated would then operate. Values were set for the properties to be acquired; the Prospectus states that generally these were to be the discounted present value of the estimated future net revenues from each partnership's proved oil and gas reserves less a discount of 5%, plus the value of other assets. The exchange was thought to produce "tax benefits from, among other things, capital gains treatment available for appreciation in the equity securities represented by the Integrated stock, and enhanced liquidity by reason of replacing a highly illiquid investment of speculative value with stock traded on the American Stock Exchange." OFS accepted Integrated's offer and transferred its oil and gas properties in return for Integrated stock and Integrated's assumption of $620,302 of debt.
 
 
 7
 The Prospectus Supplement, which was filed with the Registration Statement as a post-effective amendment, stated that the number of Integrated shares for which interests would be exchanged "has been determined by dividing the Exchange Values of such Interests by $10.00, an arbitrary figure." It went on to explain:
 
 
 8
 There can be no assurance that Holders who receive Common Stock in exchange for their Interests will thereafter be able to sell such Common Stock for prices equal to $10 per share, in which event Holders who sell such Common Stock may realize less than the Exchange Values assigned to these Interests. Future prices of the Common Stock issued pursuant to the Exchange Offer may be significantly lower than $10 per share and will depend upon many factors, including future operations and earnings of the Company, future legislation and other developments affecting the oil and gas industry in general, and business and economic conditions.[3]
 
 
 9
 It also detailed how the Exchange Values had been computed. The Prospectus Supplement went on to list hundreds of properties to be acquired from scores of owners, their exchange values and the aggregate shares offered for tendered interests. These included ten properties being acquired from "Oil Field Systems Interests." Among these were the Mark Energy 1979 and the Mark Energy 1980 Year-End properties. These were stated to have exchange values of $4,073,050 and $2,132,800, and to be offered 407,305 and 213,280 shares, respectively. A footnote explained that the exchange values for the OFS interests had been reduced by an aggregate of $1,825,000 of indebtedness, and that additional shares, including 118,197 and 71,648, for the partnerships in which plaintiff was a limited partner, had been placed in escrow pending redetermination of the reserves as of later dates.
 
 Ahrens' affidavit continues that:
 
 10
 In the exercise of its exclusive authority over the business and affairs of the Mark Energy Partnerships, OFS decided to distribute to the limited partners of the Mark Energy Partnerships the Integrated stock transferred pursuant to the Exchange, as there was no reason for the Mark Energy Partnerships themselves to hold the stock. To implement this decision, OFS decided, as a matter of expedience, to have Integrated issue the stock transferred pursuant to the Exchange directly to the limited partners of the Mark Energy Partnerships.
 
 
 11
 He goes on to say that he had supplied the limited partners with the Prospectus and Prospectus Supplement and had explained various aspects of the exchange and some of the benefits they could derive. He states, however, that:
 
 
 12
 Since OFS exclusively made the decision to go forward with the Exchange pursuant to its authority as general partner of the OFS Partnerships, neither I nor anyone else associated with OFS sought approval or acceptance by the limited partners of the Exchange or the decision to participate in the Exchange.
 
 
 13
 He sought to excuse the mistaken reference to Bache's role on two bases: One was that the Prospectus and Prospectus Supplement made the true facts clear; the other was that the limited partners could not have relied upon it since they were not participants in the exchange or in the decision to exchange. In two concluding paragraphs Ahrens avers that neither he nor anyone affiliated with OFS profited or benefited secretly from the exchange.
 
 
 14
 The Integrated stock was listed on the American Stock Exchange. Its price has never come near the figure of $10. Trading began on November 12, 1981; the stock closed that day at 4 1/4, after reaching a high of 4 7/8 and a low of 4 and has traded steadily down, now hovering around 1. The theory of the amended complaint is that OFS paid off the limited partners' investment, whatever this may have been, in an unstated number of Integrated shares determined by dividing the investment by $10, which it knew to be an overvaluation of the Integrated shares, and kept the rest of the shares for itself, and that Integrated knowingly participated in the scheme.
 
 
 15
 The district court in a memorandum decision dismissed the amended complaint. Mayer v. Oil Field Systems Corp., No. 82 Civ. 3757, slip op. at 5 (S.D.N.Y. Jan. 13, 1983). It reasoned that Secs. 11 and 12(2) of the 1933 Act require that the plaintiff be a purchaser of securities and that Sec. 10(b) of the 1934 Act and Rule 10b-5 require that plaintiff be either a purchaser or seller of securities and that Mayer was not.
 
 DISCUSSION
 
 16
 Taking first the claim under Sec. 10(b) and Rule 10b-5 and fully accepting the judge's premise, we do not agree with his conclusion that dismissal was required under the rule of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), which was affirmed in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The plaintiffs in Birnbaum ended up after the alleged fraud exactly where they had begun--holders of Newport stock. The plaintiffs in Blue Chip likewise ended up after the alleged fraud exactly where they had begun--non-holders of Blue Chip stock. Mayer began as owner of limited partnership interests in partnerships owning oil and gas properties and ended up after the alleged fraud as a stockholder of Integrated, with the partnerships owning no physical assets.[4] Something must have happened along the line.
 
 
 17
 A threshold issue, to wit, whether Mayer's interest in the Mark Energy Partnerships is a security under Sec. 10(b) of the Securities Exchange Act of 1934 is readily resolved. An investment contract is a security under Sec. 2(1) of the Securities Act of 1933 and Sec. 3(a)(10) of the Securities Exchange Act of 1934. Under the test whether an investment contract is a security established in SEC v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), a limited partnership interest generally is a security because such an interest involves investment "in a common enterprise with profits to come solely from the efforts of others." Id. See SEC v. Aqua-Sonic Products Corp., 687 F.2d 577, 581-84 (2 Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982). Where the investing limited partners exercised no managerial role in the partnership's affairs, courts have held that limited partnership interests are securities, at least when, as here, there were a considerable number of limited partners. See, e.g., Goodman v. Epstein, 582 F.2d 388, 406-08 (7 Cir.1978), cert. denied, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); SEC v. Murphy, 626 F.2d 633, 640-41 (9 Cir.1980); SEC v. Holschuh, 694 F.2d 130, 137 (7 Cir.1982); Hirsch v. duPont, 396 F.Supp. 1214, 1227-28 (S.D.N.Y.1975), aff'd, 553 F.2d 750 (2 Cir.1977). Commentators have approved. See Jennings & Marsh, Securities Regulation: Cases and Materials 225 (5th ed. 1982); Loss, Fundamentals of Securities Regulation 198-99 (1983). We thus conclude that Mayer's limited partnership interest is a security under Sec. 10(b) of the 1934 Act.
 
 
 18
 The case therefore is like the sale of the assets of Corporation A, having preferred and common stock, for stock in Corporation B which is distributable to A's stockholders and the preferred stockholders allege fraud. Technically such a transaction is a sale of A's assets to B with A the purchaser and B the seller of securities. However, A's preferred stockholders would have standing to sue under Rule 10b-5, whether because they are the real sellers or purchasers, the difference between the hypothetical and a merger, see SEC v. National Securities, Inc., 393 U.S. 453, 467-68, 89 S.Ct. 564, 572-73, 21 L.Ed.2d 668 (1979), being purely formal, or because the transaction whereby their stock in A has been transmuted into stock in B was "in connection with" Corporation A's purchase and Corporation B's sales of B's shares, see Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 12-13, 92 S.Ct. 165, 168-169, 30 L.Ed.2d 128 (1971) ("deceptive practices touching its sale of securities as an investor"). This conclusion appears to follow a fortiori from this court's much cited decision in Vine v. Beneficial Finance Co., 374 F.2d 627, 634-35 (2 Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), that when a stockholder has been forced by fraudulent means into a situation where he has no alternative to disposing of his stock for cash, Rule 10b-5 applies even though he has not actually sold his stock. The Fifth Circuit applied the rationale of Vine to hold that stockholders could sue under Rule 10b-5 with respect to a fraudulent liquidation, Coffee v. Permian Corp., 434 F.2d 383 (1970), cert. denied, 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973); Dudley v. Southeastern Factor and Finance Corp., 446 F.2d 303, cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971), and has held that these decisions have survived Blue Chip, Alley v. Miramon, 614 F.2d 1372, 1386-87 (1980) (Wisdom, J.).[5]
 
 
 19
 Our disagreement with the district judge's holding that plaintiff lacked standing does not necessarily mean that he was wrong in dismissing the amended complaint. Defendants seek to support his ruling on three additional grounds. They argue, first, that the $10 figure was immaterial; second, that its artificiality was fully disclosed in the Prospectus and Prospectus Supplement; and, third, that in any event the limited partners could not have done anything to prevent the transaction since all powers over the assets of the partnerships were vested in the general partner.
 
 
 20
 On the first point, if in fact all the Integrated shares issuable to the Mark Energy Partnerships were turned over to the limited partners, defendants would be right. From the standpoint of the selling partnerships it made no difference whether the Integrated stock was taken at a figure of $10 per share or, e.g., $5 a share. The lower figure would have yielded twice as many shares to the Mark Energy Partnerships but it would have done the same for all the selling partnerships.[6] The fairness of the exchange to the Mark Energy Partnerships depended on whether their assets were appraised properly vis-a-vis those of other sellers, and the amended complaint does not allege they were not. But the situation is otherwise if a knowingly inflated valuation of the Integrated shares was used to determine how many shares should be distributed to the limited partners in satisfaction of their investment. For example, if a limited partner had an investment of $100,000 and was paid off with 1000 shares of stock taken at $10 per share but known to have real value of only $5, he would have been defrauded of $50,000. The amended complaint can fairly be read to allege this and although Ahrens' affidavit can be read to say that all of the Integrated shares were distributed to the limited partners, neither the district judge nor we can properly consider this for the procedural reasons concerning "speaking" motions under Fed.R.Civ.P. 12(b)(6) stated above.
 
 
 21
 For somewhat similar reasons we find defendants' second argument insufficient. The disclosure may have been adequate if, as apparently was the case, it was addressed only to the limited partnerships which were the sellers. Even if it was known that the $10 figure was excessive, this would have had no effect (except in preferring sellers having debt, see supra note 6). The figure was used only to translate the dollar valuation of each property into a number of Integrated shares and, as pointed out above, it made no difference whether the figure was $10 or $5 or any other. But the Prospectus and Prospectus Supplement did not disclose that the $10 per share valuation was to be used in determining how many Integrated shares were to be issued in satisfaction of the limited partners' investment. If, as alleged in the amended complaint, the defendants knew that there was no possibility that the Integrated shares could be sold for $10 per share, the trier of the facts could justifiably find that the disclosure was not adequate to defeat liability to them.
 
 
 22
 Defendants' final argument is that their alleged knowledge that the Integrated shares would not sell at $10 per share and any failure adequately to disclose this information if it were material in allocating the shares between the limited and general partners still would not produce a claim under Sec. 10(b) and Rule 10b-5 since the limited partners' assent was not required to carry out the exchange. This takes us back to the now famous footnote 14 in Santa Fe Industries v. Green, 430 U.S. 462, 474 n. 14, 97 S.Ct. 1292, 1301 n. 14, 51 L.Ed.2d 480 (1977), our decision in Goldberg v. Meridor, 567 F.2d 209, 218-20 (2 Cir.1977), cert. denied, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), and our recent one, handed down on the very day this case was argued, in Madison Consultants v. Federal Deposit Insurance Corp., 710 F.2d 57, 62-64 (2 Cir.1983). We said in the latter case, 710 F.2d at 63:
 
 
 23
 The Courts of Appeals have unanimously read this language [see Santa Fe Industries, supra, 430 U.S. at 474 n. 14, 97 S.Ct. at 1301 n. 14] to mean that plaintiffs may prove the existence of a means of self-protection by showing that they could have pursued some available state remedy if they had not been deceived.[7]
 
 
 24
 On the other hand, Madison Consultants clarified Goldberg by deciding that the plaintiff must show not merely that an available state court remedy existed but that "he would have succeeded in preventing the loss he in fact suffered." Id. at 65.
 
 
 25
 Authority is scarcely required for the proposition that a limited partner, who is entitled under the partnership agreement to be paid in full before any payment to general partners, may invoke the aid of the courts to prevent a transaction whereby payment would be made in securities known to the general partners not to have the value attributed to them. Pennsylvania has adopted the Uniform Limited Partnership Act (ULPA), 59 Pa.Cons.Stat.Ann. Secs. 501 et seq. (Purdon Supp.1983). This statute gives limited partners the right to have a court-ordered accounting or dissolution of the partnership. Id. Sec. 524(a)(2), (3). Under Sec. 545 of the Act, as interpreted by a federal court, a limited partner may bring a derivative action on behalf of the partnership for malfeasance of the general partners. Engl v. Berg, 511 F.Supp. 1146, 1152-53 (E.D.Pa.1981). See Klebanow v. New York Produce Exchange, 344 F.2d 294, 297-98 (2 Cir.1965) (upholding right to bring derivative action under identical provision of ULPA in New York); Riviera Congress Associates v. Yassky, 18 N.Y.2d 540, 547-48, 223 N.E.2d 876, 879-880, 277 N.Y.S.2d 386, 392 (1966) (confirming Klebanow 's prediction of New York law). Defendants have not pointed to any authority indicating that a Pennsylvania court would not afford relief if limited partners could show general partners were attempting to freeze them out with paper known to be worth only a fraction of the limited partners' investment, or that relief could be afforded only in a derivative suit brought on behalf of the partnership.[8] Plaintiff's allegations of this, while vague and perhaps inducing scepticism, are sufficient to withstand a motion under Fed.R.Civ.P. 12(b)(6).
 
 
 26
 In sum, since the amended complaint's allegations of scienter were clearly adequate, the key question with respect to appellees' attempts to justify dismissal of the amended complaint on grounds other than standing is whether it sufficiently alleged that some of the shares issuable to the Mark Energy Partnerships found their way into the hands of the general partners. In answering that question we must pay heed both to the general command of Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-103, 2 L.Ed.2d 80 (1957) and to the more specific one of Fed.R.Civ.P. 9(b). It is not hard to think of a complaint that would say this more clearly. Still paragraph 11 does refer to a "pay-back to plaintiff and others similarly situated whereby defendants Oil Field and John Does would receive shares in the exchange to which they were not entitled," and paragraph 13 alleges that "defendants wrongfully created the illusion of a pay-back of the investments of the plaintiff and others similarly situated and the defendant general partners did thus wrongfully share in the exchange of limited partnerships for Integrated shares by an accelerated pay-out to the general partner defendants." Also paragraph 19 charges, among other things, that the $10 per share valuation "was fixed for the self-interest, self profit and unjust enrichment of the defendants", and paragraph 20 complains that defendants schemed "to wrongfully profit the defendants in the exchange offer of Integrated before the investment of the plaintiff and others similarly situated were repaid," and that the general partners accelerated a pay-out to themselves. This was enough to make dismissal impermissible once standing was established. Discovery might be initially limited to the narrow question of where the Integrated shares went. If this should demonstrate that all went to the limited partners, defendants could move for summary judgment.
 
 
 27
 In the light of our holding that the amended complaint stated a claim under Sec. 10(b) of the 1934 Act and Rule 10b-5 issued thereunder we prefer to await further proceedings under that Act and Rule before considering the rulings that it did not state a claim under Secs. 11 or 12(2) of the 1933 Act. See 28 U.S.C. Sec. 2106.
 
 
 28
 The order dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Defendants had moved to dismiss the original complaint for failure to state federal claims on which relief could be granted and the failure to plead fraud with the specificity required by Fed.R.Civ.P. 9(b). Without awaiting a ruling on these motions, plaintiff filed an amended complaint and a memorandum in opposition to the motions to dismiss the original complaint
 
 
 [2]
 The market risk should be somewhat ameliorated by the fact that Bache is simultaneously underwriting Integrated's shares at $10 per share and would have strong incentive to protect the market. The conventional wisdom as set forth in the Fortune article is that the stocks initially go down while people who exchanged liquidate their interest, and then zestily rebound
 Jt.App. at 11a.
 
 
 [3]
 As we read the Prospectus and Prospectus Supplement, "Holders" means the partnership and not the owners of partnership interests
 
 
 [4]
 Since there is no allegation that the Mark Energy Partnerships have been dissolved, it may be that Mayer is still a limited partner in a theoretical sense. However, the partnership has no assets
 
 
 [5]
 Judge Wisdom noted that lower court decisions subsequent to Blue Chip have continued to apply the forced seller exception and that most commentators have agreed. 614 F.2d at 1386 & nn. 26 and 27
 
 
 [6]
 Indeed, as the Ahrens affidavit points out, the OFS partnerships benefited from use of a higher figure since this was used in calculating the number of Integrated shares withheld on account of OFS' debt; many sellers had no debt
 
 
 [7]
 We cited, in addition to Goldberg v. Meridor, supra, Healey v. Catalyst Recovery of Pennsylvania, Inc., 616 F.2d 641, 645-47 (3 Cir.1980); Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co., 606 F.2d 602, 613-14 (5 Cir.1979), cert. denied, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980); Kidwell ex rel. Penfold v. Meikle, 597 F.2d 1273, 1291-94 (9 Cir.1979); and Wright v. Heizer Corp., 560 F.2d 236, 249-51 (7 Cir.1977), cert. denied, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). See also Loss, Fundamentals of Securities Regulation 943 (1983); Jennings and Marsh, Securities Regulation; Cases and Materials 951-52 (5th ed. 1982) (disagreeing with Goldberg ) and numerous law review articles and notes there cited
 
 
 [8]
 In fact a derivative suit would seem inappropriate in a situation like this where plaintiff's claim is not an injury to the partnership but to the limited partners