# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 12, 2009         Decided August 21, 2009

No. 08-7095

LIBERTY PROPERTY TRUST AND LIBERTY PROPERTY LIMITED
PARTNERSHIP,
APPELLANTS

v.

REPUBLIC PROPERTIES CORPORATION ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00595)

———

*J. David Dantzler* argued the cause for appellants. With
him on the briefs was *Mark E. Nagle*.

*George A. Borden* argued the cause for appellees. With him
on the brief were *Paul Martin Wolff*, *William T. Burke*, *Seymour
Glanzer*, and *Leslie R. Cohen*.

Before: SENTELLE, *Chief Judge*, GINSBURG, *Circuit Judge*,
and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

2

Dissenting opinion filed by *Senior Circuit Judge* RANDOLPH.

SENTELLE, *Chief Judge*: Plaintiffs-appellants Liberty Property Trust and Liberty Property Limited Partnership (successors in interest to Republic Property Trust and Republic Property Limited Partnership, respectively) appeal from a judgment of the district court dismissing their claims under the Securities Exchange Act of 1934 and SEC Rule 10b-5 for failure to state a claim upon which relief could be granted. The district court dismissed their federal securities claims on the basis that the limited partnership interests they sold were not "investment contracts," and therefore were not securities, under the test of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Declining jurisdiction over the remaining state law claims, the district court granted the defendants' motion to dismiss. We reverse the district court's order and remand the case for further proceedings.

## I. Background

Because this case comes to us on appeal from judgment granting a motion to dismiss, our statement of the facts adopts the allegations of the complaint. For the purpose of reviewing the granting of the motion, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and are "construed favorably to the pleader," *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Defendants-appellees Richard Kramer and Steven Grigg are real estate developers who own and control defendant-appellee Republic Properties Corporation. *Republic Property Trust v. Republic Properties Corp.*, 540 F. Supp. 2d 144, 149-50 (D.D.C. 2008). Kramer owns 85% of the corporation and Grigg 15%. *Id.* at 150.

Kramer and Grigg, together with a third developer Mark Keller, formed Republic Property Trust in July 2005. *Id.* at 149. Kramer served as chairman of the trust's board of trustees; Grigg was vice chairman, president, and chief development officer. *Id.* (citing Am. Compl. ¶¶ 4-5, 11). The trust was structured as a real estate investment trust, or REIT, under Section 856 of the Internal Revenue Code, 26 U.S.C. § 856. REITs permit diversified investment in real estate. Before its initial public offering in December 2005, the trust established Republic Property Limited Partnership. *Republic Property*, 540 F. Supp. 2d at 150. The limited partnership was "own[ed] approximately 88%" by the trust, which was also its "sole general partner." Am. Compl. ¶ 2. REITs with affiliated limited partnerships are a common device for tax planning and are called Umbrella Partnership REITs or UPREITs. *See generally* Russell J. Singer, *Understanding REITs, UPREITs, and Down-REITs, and the Tax and Business Decisions Surrounding Them*, 16 Va. Tax Rev. 329, 334 (1996). Investors may contribute appreciated property to the limited partnership without recognizing taxable income. *See id.*

In October 2004, Republic Properties Corporation agreed "to provide fee-based services to the City of West Palm Beach to design, develop and construct" "a $100 million urban mixed-use development in West Palm Beach." Am. Compl. ¶ 15; *see Republic Property*, 540 F. Supp. 2d at 150. The contract between the corporation and the West Palm Beach Community Redevelopment Agency, styled a "Professional Services Agreement," contained representations from the corporation that it would "at all times conduct business in a reputable manner" and that it "ha[d] not employed or retained any company or person . . . and ha[d] not agreed to pay any person, company, corporation, individual, or firm . . . any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from the award or making of this Agreement." Am.

Compl. ¶ 90 (modifications in original).

A month later, the defendants hired Raymond Liberti, a commissioner of West Palm Beach and member of the Community Redevelopment Agency, as a consultant to help win a "construction contract for an academic pre-med undergraduate building and teaching hospital at Florida Atlantic University." Am. Compl. Ex. B; *see Republic Property*, 540 F. Supp. 2d at 151. The corporation paid Liberti $5000 a month, and later $8000 a month, for a period extending from November 15, 2004 through May 2006. Liberti's services—"business development, government relations, lobbying, planning," and so forth—were limited to projects "outside the city limits of the City of West Palm Beach." Am. Compl. Ex. B. Nevertheless, as part of his role as a voting member of the Community Redevelopment Agency, Liberti voted in favor of approving and amending the Professional Services Agreement, which benefitted the defendants. *See* Am. Compl. ¶¶ 45, 60, 63.

In December 2005, the REIT was formed as part of a series of transactions, including an initial public offering of trust stock. In one such transaction, included in a "Contribution Agreement" signed in September 2005, the corporation sold its rights in the Professional Services Agreement to the limited partnership in exchange for 100,234 limited partnership units. The value of those units at the time of the corporation's initial public offering was approximately $1.2 million. Am. Compl. ¶ 21. Through an amendment to the Professional Services Agreement at its closing in December 2005, the corporation's rights were transferred to "Republic WPB LLC . . . , an indirectly wholly owned subsidiary of" the limited partnership. Am. Compl. ¶¶ 20, 53.

On May 5, 2006, "plaintiffs received an unwelcome surprise." *Republic Property*, 540 F. Supp at 151. That day, "[t]he United States Attorney for the Southern District of Florida

charged" Liberti "with accepting bribes and otherwise abusing his elected position," in carrying out transactions that do not involve the corporation or trust in this case. *Id.* (citing Am. Compl. ¶ 71); *see* Am. Compl. ¶ 72. Eventually, "Liberti pled guilty to the charges against him." Am. Compl. ¶ 79. Soon after the West Palm Beach press began covering the story, the city "notified" the corporation "that it intended to terminate the [Professional] Services Agreement." *Republic Property*, 540 F. Supp. 2d at 151 (citing Am. Compl. ¶ 77). In an apparent effort to minimize its losses, the limited partnership entered into an "assignment agreement with mutual releases," "terminat[ing] the Professional Services Agreement" and ending all involvement of the developers with the West Palm Beach project. Am. Compl. ¶ 80.

The plaintiffs asserted nine causes of action before the district court, alleging securities fraud under Rule 10b-5, control person liability, and various infractions of state law. *See Republic Property*, 540 F. Supp. 2d at 152, 154-64. The essence of the plaintiffs' securities law claims is that the relationship between the corporation and Liberti was material information affecting the value of the Contribution Agreement; the corporation, Kramer, and Grigg failed to disclose that relationship before assigning the Contribution Agreement to the limited partnership in exchange for limited partnership units. Granting a motion to dismiss, the district court held that the units were not securities under the Securities Exchange Act, so there could be no liability under Rule 10b-5. In a footnote, the district court suggested that the plaintiffs may not have adequately pleaded economic loss and loss causation. *Republic Property*, 540 F. Supp. 2d at 162-63 n.6. But because the district court held that "no purchase or sale of securities [had] occurred," it did not need to "resolve" the question "at present." *Id.* at 163 n.6.

We now hold that the limited partnership units were securities within the meaning of the Securities Exchange Act and reverse the order granting the motion to dismiss.

## II. Analysis

Our task is to determine whether the limited partnership units in this case fit within the definition of "securit[ies]" in Section 10(b) of the Securities Exchange Act. 15 U.S.C. § 78j(b). As relevant to this case, that section makes it "unlawful for any person . . . [t]o use or employ . . . any manipulative or deceptive device or contrivance in contravention of" rules promulgated by the Securities and Exchange Commission "in connection with the purchase or sale of any security . . . not . . . registered" on a national securities exchange. *Id.* SEC Rule 10b-5 makes it unlawful "to omit to state a material fact necessary in order to make . . . statements made . . . not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Supreme Court inferred a private cause of action from this regulation in *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n.9 (1971). Only buyers and sellers of securities have standing to bring suit under Rule 10b-5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975). We agree with and adopt the standing analysis of the district court, which held that the limited partnership, as seller of the units, had standing to bring suit under the Rule. *See Republic Property*, 540 F. Supp. 2d at 154-56.[1]

---

[1] Because the limited partnership has standing to maintain the action and a remedial award to the partnership would also make the trust whole, in the limited circumstances of this case we need not determine whether the trust independently has standing. As the plaintiffs themselves maintain, the trust and the limited partnership "both are pieces of a single operating business."

*A. Analyzing the Nature of the Limited Partnership Units*

In defining "security" for purposes of the Exchange Act, 15 U.S.C. § 78c(a)(10) provides a list of terms including "investment contract," that describe different types of securities. To determine whether the limited partnership units in this case are "investment contract[s]," we apply the test of *SEC v. W.J. Howey Co.*, 328 U.S. at 298-99. In *Howey*, the Supreme Court held an investment contract to be "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* This court has repeatedly treated this test as met when profits are generated "predominantly" from the efforts of others. *SEC v. Life Partners, Inc.*, 87 F.3d 536, 547 (D.C. Cir. 1996) ("If the investor's profits depend . . . predominantly upon the promoter's efforts, then the investor may benefit from the disclosure . . . requirements of the federal securities laws."); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 615 (D.C. Cir. 2000) (quoting *Life Partners*, 87 F.3d at 545).

Whether limited partnership units are securities is an issue of first impression in our Circuit. Other courts have considered this issue in different circumstances. In *Mayer v. Oil Field Systems Corp.*, 721 F.2d 59 (2d Cir. 1983), the Second Circuit noted that a limited partnership interest "generally is a security because such an interest involves investment 'in a common enterprise with profits to come solely from the efforts of others.'" *Id.* at 65 (quoting *Howey*, 328 U.S. at 301). The Third Circuit held limited partnership interests not to be securities when the limited partner owned 98.79% of the enterprise and therefore could exercise "pervasive control over the management of the Partnership." *Steinhardt Group, Inc. v. Citigroup*, 126 F.3d 144, 154 (3d Cir. 1997). In a case from the Southern District of New York predating both these decisions,

limited partnership interests were held to be securities when bought by plaintiffs who simultaneously bought general partnership interests because the plaintiffs were not general partners prior to the purchase. *Hirsch v. duPont*, 396 F. Supp. 1214, 1228 (S.D.N.Y. 1975), *aff'd* 553 F.2d 750 (2d Cir. 1977) (holding "plaintiffs' limited partnership interests may be considered separately from their general partnership interests purchased at the same time"). As we elaborate below, the principles courts have applied in these cases lead us to conclude that the limited partnership units in this case were securities.

In deciding the nature of the units in this case, we keep in mind the guidance of the *Steinhardt* court that "the *legal* rights and powers enjoyed by the investor" should be the touchstone of our analysis. 126 F.3d at 153 (quoting *Goodwin v. Elkins & Co.*, 730 F.2d 99, 107 (3d Cir. 1984)). Neither party argues that the limited partnership units purchased by the corporation granted legal rights to control the limited partnership.

Rather, the appellees argue that the partnership interests should not be considered securities because, in the words of the district court, "the same parties stand on both sides of the transaction." *Republic Property*, 540 F. Supp. 2d at 162. According to SEC filings, Kramer and Grigg owned over 9% of the trust, were trustees, and held executive positions within the trust. Therefore, the appellees argue, Kramer and Grigg controlled the trust, which was the general partner of the limited partnership, and so controlled the limited partnership as well. They argue that they should not be held liable for failing to disclose information to themselves. In urging us to disregard the formalities of corporate structure, the appellees stress *Howey*'s language that it was announcing a "flexible rather than a static principle," 328 U.S. at 299, and that its "emphasis should be on economic reality," *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 848 (1975) (quoting *Tcherepnin v. Knight*, 389 U.S.

332, 336 (1967)).

The appellants reply that in accepting the appellees' analysis, the district court "effectively pierced two corporate veils." In so doing, the court disregarded the organizational forms of both the corporation and the limited partnership to view the transaction as between the same parties. Piercing the corporate veil "is a step to be taken cautiously," *Quinn v. Butz*, 510 F.2d 743, 759 (D.C. Cir. 1975), and it is typically at issue in cases of common-law liability, not in a case, such as this, in which the court must determine whether it is dealing with an "investment contract" under the securities laws. Having taken advantage of the corporate form to purchase the limited partnership units, the defendants may not disregard that form to avoid liability for the same transaction. *See generally McCarthy v. Azure*, 22 F.3d 351, 362-63 (1st Cir. 1994) ("The alter ego doctrine is equitable in nature [and accordingly] can be invoked 'only where equity requires the action to assist a third party'"); *PayPhone LLC v. Brooks Fiber Commc'ns.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001) ("[A] corporation may not pierce its own corporate veil for its own benefit."). In this case, the defendants did not even allege that the corporate form was "a sham." *United States v. Andrews*, 146 F.3d 933, 939-40 (D.C. Cir. 1998); *see also United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 322 F.3d 738, 741 (D.C. Cir. 2003) (finding it inappropriate to pierce a corporate veil when the "complaint did not even allege that [the] corporate form was a sham"). And the appellees point to no cases where defendants have avoided liability—under the securities laws or elsewhere—on the basis of their own control, pervasive or otherwise. We see no reason to pioneer a new application of that limited doctrine on the facts before us.[2]

---

[2] Our dissenting colleague, like the appellees, points to cases in which "[f]orm was disregarded for substance and emphasis was

Even assuming it were proper to disregard the corporate form, Kramer and Grigg did not exercise sufficient control of the limited partnership to disqualify their units as securities.

---

placed upon economic reality." *Howey*, 328 U.S. at 298. Those cases, however, address situations in which courts, rather than simply accepting the label attached to an instrument by the issuer, are to inquire into the actual substance of the transaction. *See id.* at 300 (declining to be bound by "the legal terminology in which such contracts are clothed"); *United Housing Found.*, 421 U.S. at 850 (holding "the name given to an instrument is not dispositive"); *Tcherepnin*, 389 U.S. at 339 (examining "withdrawable capital shares" and concluding such interests "have the essential attributes of investment contracts"); *SEC v. Aqua-Sonic Products Corp.*, 687 F.2d 577, 584 (2d Cir. 1982) (looking behind the formal rights of investors and asking whether "it was reasonable to expect investors to exercise their retained rights under the sales agency agreement in a nontrivial manner"). Looking to economic reality, however, does not warrant a departure from the general rule that the corporate form "[may be disregarded only where equity requires the action to assist a third party." 1 W. Fletcher, Cyclopedia of Corporations § 41.10, at 615 (1990). Our dissenting colleague is quite correct that the doctrine of piercing the corporate veil has no application to this case. Accordingly, we refuse to apply it to allow the defendants to escape liability by prevailing on a motion to dismiss. Our conclusion is reinforced by the Supreme Court's instruction that the Securities Act "should be construed broadly to effectuate its purpose[] ... to protect investors through the requirement of full disclosure." *Tcherepnin*, 389 U.S. at 336. Viewed favorably to the plaintiffs, the facts here indicate the partnership and the corporation were distinct entities, which served independent purposes, and between which a transaction could occur that benefited the corporation at the expense of the partnership. It was inappropriate, on a motion to dismiss, for the district court to disregard the corporate form without a factual determination that each corporation was "simply the alter ego of its owners." *Valley Finance Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980). In this case the defendants did not even allege, much less prove, that proposition.

Republic Property Trust had six trustees and ten executive officers. Kramer and Grigg's two votes were a minority of the board. *Cf. Kravco Inc. v. Rodamco N. America, N.V.*, No. 00-0272, 2000 WL 1839735, *5-6 (E.D. Pa. Dec. 13, 2000) (when investors held three of six seats on the board, their limited partnership units were not securities). Nor does the analysis change if we consider the trust at the time the Contribution Agreement was signed in September 2005, when Kramer and Grigg were two of three trustees. Although they then constituted a majority of the board, the *Howey* test turns on "whether profits are expected to arise from the efforts of others." *Life Partners*, 87 F.3d at 545. If Kramer and Grigg signed the agreement expecting additional trustees to come aboard before the deal was closed, then they "expected" to profit from the efforts of the independent trustees added before the exchange was completed. Disregarding the corporate form, Kramer and Grigg still appear to have been dealing in securities.

### B.  Other Issues

Even if the limited partnership units were investment contracts, and thus securities, the district court may still have been correct in granting the defendants' motion to dismiss if the plaintiffs' claims would fail for legally independent reasons. Although we review all questions of law de novo and "have the discretion to consider questions of law that were . . . no[t] passed upon by the District Court," this court's "normal rule" is to avoid such consideration. *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1085 (D.C. Cir. 1984); *see Eltayib v. United States Coast Guard*, 53 F. App'x 127, 127 (D.C. Cir. 2002) (citing same).

In a footnote, the district court noted that it found the plaintiffs' pleading of economic loss and loss causation to be "problematic." *Republic Property*, 540 F. Supp. 2d at 162 n.6.

The district court wondered whether the limited partnership's assignment of the Professional Services Agreement to a subsidiary broke the chain of causation. *Id.* The plaintiffs, however, alleged the subsidiary was a mere instrumentality of the parent, *see, e.g.*, *Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980) ("Where . . . the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries."), and they may be able to prove as much at trial. On remand, and on a more developed record, the district court may determine the relationships among the trust, the limited partnership, and the subsidiary entities through which they conducted business. *See* Am. Compl. ¶ 20 (describing "Republic WPB LLC" as "an indirectly wholly owned subsidiary of" the limited partnership).

With respect to loss causation, the plaintiffs' complaint alleges that West Palm Beach and the Community Redevelopment Agency cancelled the Professional Services Agreement as a direct result of the relationship between the corporation and Liberti. Am. Compl. ¶¶ 77, 90-91. This is a pleading of loss causation, and it was adequate to survive a motion to dismiss.

Finally, the appellees argue that the district court's judgment may be affirmed on the alternative ground that the plaintiffs failed to adequately plead scienter under the Private Securities Litigation Reform Act of 1995; that is, the plaintiffs must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), namely an "intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). Either intentional wrongdoing or "extreme recklessness" satisfies the standard. *SEC v. Steadman*, 967 F.2d

636, 641 (D.C. Cir. 1992). The appellees argue that the plaintiffs' allegations "most readily give rise to an innocent inference," but the district court found a "credible inference of fraudulent intent as to Grigg and Kramer." *Republic Property*, 540 F. Supp. 2d at 159. On this issue, we adopt the reasoning of the district court. *See id.* at 159-60.

### III.  Conclusion

We therefore reverse the district court's order granting the motion to dismiss, and remand for further proceedings.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, dissenting: I believe the district court correctly ruled that the limited partnership units sold to the Republic Property Corporation in the September 2005 transaction did not qualify as "securit[ies]" under the Securities and Exchange Act, 15 U.S.C. § 77b(a)(1). *Republic Property Trust v. Republic Properties Corp.*, 540 F. Supp. 2d 144, 160–62 (D.D.C. 2008). As the majority points out, some courts have held that limited partnership units are "investment contracts," and thus "securities" under § 77b(a)(1). *See* Louis Loss, *Securities Regulation* 971 & n.213 (4th ed. 2007). Other courts have held that limited partnership units do not meet the definition. *See id.* at 983 & n.215. The critical consideration is, as the Supreme Court held in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."

In later cases, *Howey*'s "solely from the efforts of others" has come to mean "predominantly" from the efforts of others. *SEC v. Life Partners, Inc.*, 87 F.3d 536, 545, 548 (D.C. Cir. 1996). Judge Friendly, a judge with deep experience in securities law, held that courts making that assessment should not "attach decisive significance to mere legal formality" and should "disregard[] form for substance . . . , placing emphasis upon economic reality." *SEC v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 584 (2d Cir. 1982) (Friendly, J.). *Howey* itself said as much, 328 U.S. at 299, as have later Supreme Court opinions. *See, e.g.*, *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 848 (1975); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

Here, defendants Kramer and Grigg, experienced commercial real estate investors, were on both sides of the transaction. *See Republic Property*, 540 F.Supp. 2d at 161. On one side was the Republic Property Corporation. Kramer owned 85 percent of the Corporation; Grigg owned the remaining 15 percent. One the other side of the transaction was the real estate investment trust or "REIT," which had formed the limited

partnership and managed it as its sole general partner. Kramer and Grigg, with one other colleague, established the REIT. And when the parties executed the sales agreement in September 2005,[*] Kramer and Grigg served as two of its three trustees. Grigg was President, Chief Development Officer, and Vice-Chairman of the board of trustees; Kramer was Chairman of the board of trustees. The Limited Partnership Agreement provided that "No Limited Partner . . . (*other than . . . any officer, director, . . . or trustee of the general Partner . . .*) shall take part in the operation, management or control . . . of the Partnership's business . . . ." Partnership Agreement § 8.2 (emphasis added).

In short, the profitability of the limited partnership depended on the efforts of Kramer and Grigg, and Kramer and Grigg were the sole owners of the corporation who sold the West Palm Beach contract to the limited partnership. The limited partnership units therefore cannot possibly be "securities" under *Howey* test. The Supreme Court formulated its test in light of one of the main purposes of the securities laws – to ensure that investors who will rely on a company's management receive "full and fair disclosure" regarding the securities they are purchasing. *Howey*, 328 U.S. at 299; *see Tcherepnin*, 389 U.S. at 336. The majority's conclusion disregards this essential premise. To hold – as the majority does – that Kramer and Grigg had a legal obligation to provide information to themselves is to render the securities laws senseless.

The majority's only justification for its result is that the court should not "pierce the corporate veil." Why this common

---

[*] Plaintiffs admit that the relevant transaction for purposes of their securities fraud claim was the Development Contribution Agreement executed on September 23, 2005, when Kramer and Grigg were two of only three trustees. Am. Compl. ¶¶ 18, 88–90.

law concept has anything to do with this case is a mystery. This is a federal action under Rule 10b-5, and never in the long history of that provision has the definition of security depended on the "corporate veil" concept. If the majority has a reason, any reason, for now departing from this line of authority, one would have expected it to be shared with us. Yet nothing emerges.

The majority has severed the corporate veil doctrine from its foundation. To refuse to pierce the corporate veil is to refuse to impose liability on corporate officers and directors for corporate wrongdoing. Yet Rule 10b-5 itself does the opposite. The securities laws subject individual officers to liability for misstatements of material facts. Plaintiffs here know that full well, which is why they sued not only the corporation but also Kramer and Grigg.

I can see no reason – and the majority offers none – for using the corporate veil concept, developed in a different context, to hold that "others" in the *Howey* test means only the corporation, not the owners and managers of the corporation. If the selling corporation is owned and managed by two individuals – as it was here – and if those same individuals control and manage the entity investing in that corporation – as here – the investor cannot be relying on the efforts of "others" to make a profit. That, in Judge Friendly's words, is the economic reality. The transaction at issue in this case therefore did not involve securities and the district court correctly dismissed the complaint.