# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 16, 2017

Decided August 21, 2018
Reissued December 21, 2018

No. 17-5068

K. WENDELL LEWIS, ET AL.,
APPELLEES

v.

PENSION BENEFIT GUARANTY CORPORATION,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01328)

*Charles L. Finke*, Deputy Chief Counsel, *pro hac vice*, argued the cause for appellant. With him on the briefs were *Judith R. Starr*, General Counsel, *Kenneth J. Cooper*, Assistant General Counsel, *Paula J. Connelly*, Assistant Chief Counsel, and *Mark R. Snyder*, Attorney.

*Anthony F. Shelley* argued the cause for appellees. With him on the brief were *Timothy P. O'Toole* and *Michael N. Khalil*.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

*Circuit Judge* GRIFFITH: In this interlocutory appeal, we reverse the district court's decision allowing participants in a pension plan to seek recovery of an increase in the value of plan assets that took place after the plan had been terminated.

I

A

In 2005, Delta Airlines, Inc. ("Delta") filed for bankruptcy and stopped contributing to the pension plan it sponsored for its pilots. That plan was called the Delta Pilots Retirement Plan (the "Delta Plan"). The following year, Delta and the Pension Benefit Guaranty Corporation (the "Corporation") agreed to terminate the Delta Plan because it had insufficient assets to support the benefit payments it promised to the pilots.

Title IV of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1301-1461, created the Corporation "to ensure that employees and their beneficiaries would not be completely deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *PBGC v. LTV Corp.*, 496 U.S. 633, 637 (1990) (internal quotation marks omitted). To that end, the Corporation collects premiums from plan sponsors like Delta and guarantees certain benefits to plan participants even if a plan terminates without enough money to pay its ongoing obligations. *See* 29 U.S.C. §§ 1306-1307, 1322, 1361; *LTV Corp.*, 496 U.S. at 636-38; *Davis v. PBGC* ("*Davis II*"), 734 F.3d 1161, 1164-65 (D.C. Cir. 2013). Importantly, guaranteed benefits are subject to limitations outlined in Title IV. *See* 29 U.S.C. §§ 1322(b), 1361; *LTV Corp.,* 496 U.S. at 638.

When a plan terminates without enough funding to provide even the guaranteed benefits established by Title IV, a statutory trustee collects the plan's remaining assets and begins making promised payments according to a list of statutory priorities. *See* 29 U.S.C. §§ 1341(c)(iii)(B)(3), 1342(b)-(d), 1344; 29 C.F.R. pt. 4044. The Corporation then provides additional money from its own funds to make up the difference between those payments and the guaranteed benefits. *See* 29 U.S.C. § 1322; 29 C.F.R. pt. 4022; *LTV Corp.*, 496 U.S. at 637-38; *Davis II*, 734 F.3d at 1164-65. Although not required, the Corporation is almost always appointed as the statutory trustee who administers terminated plans, assuming this responsibility in addition to its role as guarantor. *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 150 (D.C. Cir. 2006). When Delta and the Corporation agreed to terminate the Delta Plan, they agreed the Corporation would become the statutory trustee.

The Corporation determined the Delta Plan had a deficit of over $2.5 billion in unfunded benefits when it terminated, almost $800 million of which were guaranteed under Title IV. Actuarial Case Memo for Delta Pilots Retirement Plan (Mar. 24, 2010), J.A. 201-03. Based on this information, the Corporation began paying estimated post-termination benefits to the pilots. It took six years, however, to finish making final benefit determinations. Administrative appeals filed by the pilots to challenge their benefit determinations concluded the following year, in 2013. *See* 29 C.F.R. pt. 4003 (explaining the process for determining post-termination benefits); *Davis v. PBGC* ("*Davis I*"), 571 F.3d 1288, 1291 (D.C. Cir. 2009) (same); *Boivin*, 446 F.3d at 151 (same). If the Corporation found that participants were entitled to larger benefit payments than they were receiving under their initial estimates, the Corporation reimbursed those pilots with interest for any difference and adjusted their benefits going forward. *See* 29 C.F.R. § 4022.81-.83; *Davis I*, 571 F.3d at 1291.

B

Nearly 1,700 pilots in the Delta Plan or their beneficiaries sued the Corporation to further challenge their benefit determinations, assert violations of the Administrative Procedure Act, 5 U.S.C. § 706, and request various forms of injunctive and declaratory relief. The pilots also allege that the Corporation breached its fiduciary duty as statutory trustee in various ways, such as creating procedural obstacles for and withholding necessary information from participants who were trying to appeal their benefit determinations, improperly denying those appeals for untimeliness, hiring incompetent contractors to estimate the value of plan assets and leaving them unsupervised, and misallocating pension funds to younger participants who would not retire and collect the money for many years. Am. Compl. ¶¶ 66-72, J.A. 300-03. All of this, the pilots claim, allowed the Corporation to control Delta Plan assets for a longer period and collect "massive investment returns" rather than timely paying the pilots what they were owed. *Id.* ¶ 72, J.A. 303. The pilots argue that 29 U.S.C. § 1303(f)(1) authorizes "appropriate equitable relief" and so the Corporation "should be required to disgorge itself of this unjust enrichment." Am. Compl. ¶ 72, J.A. 303. And they ask to recover this money individually instead of on behalf of the Delta Plan.

The Corporation moved to dismiss the breach of fiduciary duty claim on numerous grounds, including that 29 U.S.C. § 1344(c) prevents disgorgement in this case. Section 1344(c) provides that "[a]ny increase or decrease in the value of the assets of a single-employer plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, the [C]orporation." Disgorgement, the Corporation explained,

would impermissibly redirect to the pilots the post-termination increase in the value of plan assets.

The district court denied the Corporation's motion to dismiss and its subsequent motion for reconsideration. *Lewis v. PBGC*, 197 F. Supp. 3d 16 (D.D.C. 2016), *reconsideration denied*, No. 15-cv-1328, 2017 WL 7047932 (D.D.C. Jan. 23, 2017). The district court explained that the pilots were trying only to "recoup the alleged ill-gotten investment returns on [Delta] Plan benefits that the plaintiffs claim should have been distributed to them, not . . . divert from the Corporation any gains (or losses) from assets *properly* held in the [Delta] Plan." *Lewis*, 197 F. Supp. 3d at 26 (citation omitted); *accord Lewis*, 2017 WL 7047932, at *3. Such a claim, it said, might not be prohibited by § 1344(c). *Lewis*, 2017 WL 7047932, at *3.

However, the district court concluded that "the dearth of controlling precedent that supports the Court's determination regarding the fiduciary breach claim, coupled with the Corporation's credible contention that . . . ERISA does not permit the plaintiffs to pursue this claim, raise[s] a controlling question of law as to which a substantial ground for difference of opinion exists." *Id.* The district court then certified for interlocutory appeal its order denying the motion to dismiss, and identified four "controlling questions of law" for us to consider: First, can individuals bring a fiduciary breach claim against the Corporation under § 1303(f) in addition to requesting judicial review of the Corporation's post-termination benefit determinations? Second, can plan participants in such a lawsuit recover more than their statutorily defined benefits under Title IV of ERISA? Third, can plan participants in such a lawsuit recover individual, as opposed to plan-wide, relief for the alleged fiduciary breach? And fourth, does § 1344(c) preclude the remedy of disgorgement of post-termination investment gains derived as a result of the alleged

fiduciary breach? Order Certifying Interlocutory Appeal, J.A. 384-85; *see* 28 U.S.C. § 1292(b). We granted the petition for leave to file an interlocutory appeal. J.A. 653. Since that time, the district court has resolved in favor of the Corporation all other claims in this lawsuit. *Lewis v. PBGC*, No. 15-cv-1328, 2018 WL 2926157 (D.D.C. June 11, 2018).

The district court has jurisdiction over this case pursuant to § 1303(f), and we have jurisdiction under 28 U.S.C. § 1292(b) to decide this interlocutory appeal. We review de novo the district court's decision on the motion to dismiss. *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016). Because we conclude that § 1344(c) prevents the pilots from recovering any post-termination increase in the value of Delta Plan assets, disgorgement is not an available remedy in this case and we do not address the other questions.

II

A

We begin by examining the text of § 1344(c), which provides in full:

Any increase or decrease in the value of the assets of a single-employer plan occurring during the period beginning on the later of (1) the date a trustee is appointed under section 1342(b) of this title or (2) the date on which the plan is terminated is to be allocated between the plan and the [C]orporation in the manner determined by the court (in the case of a court-appointed trustee) or as agreed upon by the [C]orporation and the plan administrator in any other case. *Any increase or decrease in the value of the assets of a single-employer plan occurring after the*

*date on which the plan is terminated shall be credited to, or suffered by, the [C]orporation.*

29 U.S.C. § 1344(c) (emphasis added).

The two halves of this subsection are in tension. The first half of § 1344(c) explains that any change in the value of plan assets occurring after "a trustee is appointed under § 1342(b)" or "the plan is terminated," whichever comes later, should be allocated "in a manner determined by the court (in the case of a court-appointed trustee) or as agreed upon by the [C]orporation and the plan administrator." This seems to conflict with the second, italicized half of § 1344(c), which clearly assigns all post-termination gains and losses to the Corporation. *See Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 515 (2d Cir.), *amended on denial of reh'g* (June 13, 1994).

We need not resolve that conflict here. One of the two events referenced in the first half of § 1344(c) is the appointment of a *pre-termination* trustee under § 1342(b). *See* 29 U.S.C. § 1342(b)(1) (providing "for the appointment of a trustee to administer the plan . . . pending the issuance of a decree . . . ordering the termination of the plan"). There was no such trustee in this case. Indeed, the Corporation became the statutory trustee by an agreement with Delta only *after* the parties terminated the Delta Plan. *See id.* § 1342(c) (providing for appointment of a trustee when a plan terminates). And there was no court determination—which is contingent on a court-appointed trustee—nor agreement between the Corporation and the plan administrator—previously Delta, now the Corporation itself—to supply competing instructions as to the allocation of any post-termination increase or decrease in the value of plan assets. In short, the first half of § 1344(c) does not apply in this case.

Moreover, although we do not decide the question, the reference to § 1342(b) suggests the first half of § 1344(c) was meant to govern changes in the value of assets pending plan termination, while the second half allocates post-termination gains and losses to the Corporation. The pilots acknowledge as much, explaining that § 1344(c) "is properly treated as a measure giving necessary guidance on the thorny issue of whose accounts are to be 'credited' with the gains or losses during the lengthy period when a plan is in the process of being terminated . . . with the monies going to the Corporation's account (for the then-terminated plan) after termination." Pilots' Br. 47-48. The increase in the value of plan assets at issue in this case occurred after, not before, the plan terminated.

Recognizing that § 1342(b) governs the appointment of pre-termination trustees also reveals a potential defect in the first half of § 1344(c) itself. The first half of § 1344(c) applies "on the later of" the appointment of a pre-termination trustee or when the plan terminates. But a pre-termination, statutory trustee will by definition be appointed before plan termination, rendering meaningless the question of which event comes later. This suggests the first half of § 1344(c) contains a drafting error, as both parties agree. *See* Oral Arg. Tr. at 8-9, 20.[1]

---

[1] Congress has considered amending § 1344(c). For example, in 1994 the U.S. House of Representatives considered a "clarification" to § 1344(c) as part of a larger bill, amending the subsection to read: "Any increase or decrease in the value of the assets of a single-employer plan occurring during the period beginning on ~~the later of (1)~~ the date a trustee is appointed under section 1342(b) of this title ~~or (2)~~ *and ending on* the date on which the plan is terminated ~~is to be~~ *shall be* allocated between the plan and the corporation in the manner determined by the court (in the case of a court-appointed trustee) or as agreed upon by the corporation and the plan administrator ~~in any other case~~ *(in any other case)*. Any increase or decrease in the value of the assets of a single-employer

We thus apply the second half of § 1344(c), which by its express terms governs the allocation of post-termination gains at issue in this case.

B

The Corporation argues that it is entitled under § 1344(c) to any post-termination increase in the value of pension plan assets. In other words, the Corporation reasons, Congress has already decided who benefits or suffers the loss from a change in the value of plan assets once that plan has been terminated. Therefore, the Corporation concludes that the pilots cannot recover that money as equitable relief for an alleged breach of fiduciary duty. We agree.

The Corporation guarantees certain benefits to participants in pension plans. *See* 29 U.S.C. § 1322. And, in exchange for paying the difference between those benefits and the plan assets once the plan terminates, as well as absorbing any subsequent "decrease in the value of the assets of a . . . plan," Congress allocated any post-termination "increase" to the Corporation. *Id.* § 1344(c); *see Paulsen v. CNF Inc.*, 559 F.3d 1061, 1073 (9th Cir. 2009) ("ERISA . . . mandates that a post-termination increase or decrease in the [plan] assets be credited or suffered by [the Corporation]."). That money is not available to plan participants.

The pilots argue that statutory trustees of *terminated* pension plans have a fiduciary duty to plan participants, and

---

plan occurring after the date on which the plan is terminated shall be credited to, or suffered by, the corporation." H.R. Rep. No. 103-632, at 204 (Aug. 26, 1994). But the House of Representatives never voted on the proposed bill.

§ 1303(f)(1) authorizes "appropriate equitable relief" if that duty is breached. The pilots explain that 29 U.S.C. § 1132(a)(3)(B) in Title I of ERISA, which governs *ongoing* plans, provides for "appropriate equitable relief" as well. In that context, they continue, the Supreme Court has defined "equitable relief" as "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). The pilots insist that "[e]quity courts possessed the power to provide monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment," *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011), through a remedy such as disgorgement. And they point out that other circuits have allowed claims for disgorgement to proceed under Title I with regard to ongoing plans. *See, e.g.*, *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364-65 (4th Cir. 2015); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 419-20 (3d Cir. 2013). *But see Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 370-76 (6th Cir. 2015) (en banc).

According to the pilots, if disgorgement is available as "appropriate equitable relief" under § 1132(a)(3) to prevent the unjust enrichment of fiduciaries of ongoing plans, then the presumption of consistent usage dictates that disgorgement is also "appropriate equitable relief" under § 1303(f)(1) with regard to terminated plans. *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (recognizing the "natural presumption that identical words used in different parts of the same act are intended to have the same meaning" (quoting *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932))). In fact, ERISA even equates the fiduciary status of a post-termination, statutory trustee with that of a fiduciary of an ongoing plan. *See* 29 U.S.C. § 1342(d)(3) ("[A] trustee appointed under this section [in Title IV] . . . shall be, with respect to the plan, a fiduciary within the meaning of [Title

I].”). The pilots conclude that § 1344(c) says nothing about available remedies if the Corporation breaches its fiduciary duty and, as a result, should not limit the broad wording of § 1303(f)(1).

We are unpersuaded. Section 1344(c) does not apply to ongoing plans so "the presumption of consistent usage 'readily yields' to context." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014) (quoting *Envtl. Def.*, 549 U.S. at 574). Ongoing plans are not subject to the same statutory instructions as terminated plans when it comes to "[a]ny increase or decrease in the value of the assets." 29 U.S.C. § 1344(c).

In addition, ERISA repeatedly qualifies the fiduciary status of post-termination trustees "to the extent that the provisions of [Title IV] are inconsistent" with fiduciary requirements. *Id.* § 1342(d)(3). Requiring the Corporation to disgorge a post-termination increase in the value of plan assets flatly contradicts § 1344(c). By statute, the pilots are entitled to their guaranteed benefits, while Congress directed that any post-termination increase or decrease in the value of plan assets should go to the Corporation. The pilots cannot circumvent that decision under the heading of equitable relief. In other words, disgorgement would not be "appropriate" here. *Id.* § 1303(f)(1).

The pilots also claim that "duties imposed on the statutory trustee do not fall by the wayside just because the [Corporation], and not a private party, becomes the trustee." *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 337 (4th Cir. 2007). They reason that the Corporation should not be able to escape the liability for its misdeeds that would otherwise apply to a private trustee. Underlying this argument is an assumption that the pilots would be entitled to any post-termination increase in the value of plan assets if a

private party, and not the Corporation, were the trustee in this case. But nothing in § 1344(c) suggests that the identity of the statutory trustee affects who takes gains and losses after the plan terminates. They all go to the Corporation. The pilots cannot have the increase, and they presumably would not want the decrease, regardless of who acts as statutory trustee of the terminated Delta Plan.

The pilots' request for post-termination investment gains is fundamentally flawed. Because § 1344(c) does not depend on whether the Corporation acts as statutory trustee of the terminated plan, any post-termination change in the value of plan assets must be "credited to, or suffered by" the Corporation in its capacity as *guarantor*. 29 U.S.C. § 1344(c). This makes sense: Each participant's benefits are calculated at the time of plan termination and shielded from additional loss by the Corporation. If plan assets increase in value, the Corporation is likewise credited with that gain. The Corporation assumes this responsibility as guarantor of certain plan benefits. But the pilots sue the Corporation for fiduciary breach in its capacity as statutory *trustee*. *See* Am. Compl. ¶ 64, J.A. 300; 29 U.S.C. § 1342(d)(3) ("Except to the extent inconsistent with the provisions of [ERISA], . . . a trustee appointed under this section shall be . . . a fiduciary . . . ."). The disconnect between suing the Corporation in its role as statutory trustee, yet requesting a remedy that the Corporation can supply only in its role as guarantor, further demonstrates that disgorgement is inconsistent with the statutory scheme for terminated pension plans and therefore not "appropriate equitable relief." *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

Finally, the district court distinguished between assets *properly* held by the statutory trustee and assets held in breach of a fiduciary duty. *Lewis*, 197 F. Supp. 3d at 26; *accord Lewis*, 2017 WL 7047932, at *3. If the statutory trustee retains plan assets improperly, the argument goes, § 1344(c) simply does not apply and plan participants can recover any post-termination increase. The pilots repeat that argument here, suggesting it avoids any tension between the broad wording of "appropriate equitable relief" in § 1303(f)(1) and the directive in § 1344(c) that any post-termination increase or decrease in the value of plan assets goes to the Corporation.

We do not see this distinction in § 1344(c). And "given the express language of the statute" allocating post-termination gains and losses to the Corporation, we decline to create an "implied exception" to those unambiguous terms. *Bennett v. Arkansas*, 485 U.S. 395, 397-98 (1988). Indeed, § 1344(c) allocates to the Corporation "any" post-termination increase in the value of plan assets. "[T]he expansive word 'any' and the absence of restrictive language" promotes a sweeping application of that provision. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008). By contrast, we are reluctant to expand the scope of "appropriate equitable relief" in a way that would impose trustee liability on the Corporation in its role as guarantor.

This does not mean the pilots lacked possible remedies for their alleged injuries. Both parties agree that other forms of equitable relief are generally available in cases of fiduciary breach, including removal of the Corporation as statutory trustee of the terminated plan. *See, e.g.*, *Pineiro v. PBGC*, 318 F. Supp. 2d 67, 94 (S.D.N.Y. 2003); *cf.* 29 U.S.C. § 1109(a) (allowing for removal of an ongoing-plan fiduciary). And the pilots have been able to challenge their benefit determinations, although the district court rejected those claims on the merits.

But recovering the post-termination increase in the value of plan assets is not an available remedy where, as here, the limitation of § 1344(c) applies.

## III

We reverse the district court's ruling that disgorgement is an available remedy against the Corporation and we remand to the district court for further proceedings consistent with this opinion.[2]

*So ordered.*

---

[2] In their petition asking that we amend the opinion, the pilots assert that their amended complaint—specifically, the fiduciary breach claim—seeks remedies in addition to disgorgement, which the pilots hope to pursue on remand. *See* Pet. 6-11. The Corporation responds that the fiduciary breach claim seeks only disgorgement, the pilots have not pursued additional remedies throughout "multiple years of litigation," and the panel "should not resuscitate the fiduciary breach claim" "for reasons [the pilots] did not advance in the district court." Resp. 2, 8. Our "normal rule" is to avoid passing on an issue that the district court has not fully addressed, *Liberty Prop. Tr. v. Republic Props. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009), and remand is particularly appropriate when the issue hinges on the proper construction of the available remedies in litigation over which the district court long presided, *see Blessing v. Freestone*, 520 U.S. 329, 345-46 (1997) (remanding because "the complaint is less than clear" with regard to the rights asserted and the specific relief sought, and that "defect is best addressed by sending the case back for the District Court to construe the complaint in the first instance, in order to determine exactly what rights, considered in their most concrete, specific form, respondents are asserting"). Therefore, we remand the matter to the district court for further proceedings consistent with this opinion, and specifically to determine in the first instance whether the amended complaint seeks remedies for the alleged fiduciary breach in addition to disgorgement. Of course the implications of the opinion's statutory analysis remain unaltered.