# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 9, 2020　　　　Decided March 30, 2021

No. 19-5337

VOTEVETS ACTION FUND,
APPELLANT

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS AND
DENIS MCDONOUGH, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01925)

*Karianne M. Jones* argued the cause for appellant. With her on the briefs were *Benjamin M. Seel* and *Sean A. Lev*.

*Daniel Winik*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Mark B. Stern*, Attorney.

Before: GARLAND[*], PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  VoteVets Action Fund (VoteVets), a nonprofit group that engages in public advocacy on behalf of veterans, claims the Federal Advisory Committee Act applies to an entity allegedly established by President Trump and the Department of Veterans Affairs to advise the Department. VoteVets dubs the entity the "Mar-a-Lago Council," after the Trump resort and club where it first convened.  According to the amended complaint, although the Council operated for nearly two years and provided advice on various topics, the Department failed to comply with the Federal Advisory Committee Act's requirements.

The district court held that the Act did not apply to the so-called Mar-a-Lago Council and dismissed VoteVets' complaint. Because we conclude that VoteVets plausibly alleges that the Council was a governmentally established or utilized advisory group within the meaning of the Act, we reverse.

## BACKGROUND

### A.  The Federal Advisory Committee Act

Congress enacted the Federal Advisory Committee Act, Pub. L. No. 92-463, 86 Stat. 770 (1972) (codified as amended at 5 U.S.C. app. 2 §§ 1-16) (FACA or the Act), with the objective of "opening many advisory relationships to public scrutiny except in certain narrowly defined situations," *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 463 (1989).  FACA's

---

[*] Judge Garland was a member of the panel at the time this case was submitted but did not participate in the final disposition of the case.

terms promote transparency, accountability, and open public participation in executive branch decisions and prevent informal advisory committees from exerting improper or one-sided influence. Specifically, the statute seeks to "ensure that [advisory committees'] creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Id.* at 446 (citing 5 U.S.C. app. 2 § 2(b)).

At the same time, "although its reach is extensive," FACA does not "cover every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Id.* at 453. Executive officials' solicitation of views from independently formed and operated entities— such as nonprofit organizations, associations, or political parties—with relevant insight and experience does not, without more, implicate the Act. *Id.* at 452-53. Nor does FACA apply to executive consultations on policy issues with *ad hoc* collections of private individuals who are not convened "to render advice or recommendations, *as a group.*" *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 913 (D.C. Cir. 1993).

Where it applies, FACA requires, among other things, that each covered advisory committee publicly file its charter, 5 U.S.C. app. 2 § 9(c), that "[e]ach advisory committee meeting . . . be open to the public" following public notice, that "[d]etailed minutes" of all such meetings be maintained, *id.* § 10(a)(1)-(2), (c), and that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the committee be made available to the public, *id.* § 10(b).

**B. VoteVets' Allegations**

VoteVets filed this suit in August 2018, claiming that the Mar-a-Lago Council was an advisory committee created to advise the Department of Veterans Affairs (VA or Department), that President Trump selected its members, that the President utilized the Council to inform and guide decisions on important aspects of veterans' care, and that over the course of the Council's work the Department and the Council did not comply with applicable requirements of FACA. Because we review the adequacy of the complaint as a matter of pleading, and not the truth of its allegations, the facts recited here are as plaintiff alleges them, with reasonable inferences drawn in the plaintiff's favor. We take no position on what might ultimately be proved.

On December 28, 2016, President-elect Donald Trump attended a meeting with healthcare executives at the Mar-a-Lago resort in Palm Beach, Florida. Three men, all of whom are members of the Mar-a-Lago Club, organized the meeting: Isaac "Ike" Perlmutter, CEO of Marvel Entertainment; Bruce Moskowitz, a medical doctor and founder of the Biomedical Research and Education Foundation; and Marc Sherman, managing director of the consulting firm Alvarez & Marsal. Am. Compl. ¶¶ 2, 30-31. None of those men had experience in the U.S. military or government. *Id.* ¶ 2. According to the President-elect's spokesman, Sean Spicer, the meeting involved "lots of brainstorming on how to improve and reform" the Department. *Id.* ¶ 36(a).

A few weeks later, in January 2017, the President-elect announced at a press conference that his incoming administration would be setting up a group "to help David [Shulkin]," the nominee for Secretary of Veterans Affairs, "straighten out the [Department]." *Id.* ¶ 28; Defs.' Mot. Dismiss, Ex. B at 3-4,

*VoteVets Action Fund v. Dep't of Veterans Affairs*, 414 F. Supp. 3d 61 (D.D.C. 2019) (No. 18-cv-01925), ECF No. 8-3 (news conference transcript). He added that Ike Perlmutter was "very, very involved" in that effort. Am. Compl. ¶ 36(b). After the press conference, a source said that "Perlmutter would 'take on an informal, though "significant," advisory role in Trump's administration with respect to veterans' affairs.'" *Id.* VoteVets alleges that President Trump named Perlmutter "to lead the Council" and Moskowitz and Sherman to serve as members. *Id.* ¶ 29. No effort was made to ensure a balanced membership, nor to protect against inappropriate conflicts of interest.

The Mar-a-Lago Council reconvened on or around February 7, 2017, when Perlmutter, Moskowitz, and Sherman met with Shulkin. *Id.* ¶ 36(c); Appellant's Br. 7-8. After the meeting, Moskowitz sent an email to Shulkin with the subject line "Group meeting," explaining that the group did "not need to meet in person monthly" but could have in-person meetings "when necessary" and collaborate by phone calls at other times. Am. Compl. ¶ 36(d). Over the ensuing year and a half, Perlmutter, Moskowitz, and Sherman conducted more than twenty-five meetings, *id.* ¶ 3, and advised the Department on a range of projects including an initiative to curb veteran suicide, *id.* ¶ 45, development of a mobile application for VA patients to locate services and records, *id.* ¶¶ 46-60, development of a national medical device registry, *id.* ¶¶ 61-63, a $10 billion contract to modernize the VA's digital records system, *id.* ¶¶ 9, 64-67, evaluation of VA surgery programs, *id.* ¶ 70, a potential partnership to develop a tracking system for human tissue devices, *id.* ¶ 71, privatization of essential VA healthcare services, *id.* ¶¶ 68-69, and development of a new VA mental health initiative, *id.* ¶ 72. None of the Council's meetings was publicly announced in advance or open to the public, and no minutes were kept or documents made public. *Id.* ¶¶ 76-77, 79, 83-85.

## C. Prior Proceedings

Defendants moved to dismiss for lack of standing and failure to state a claim. The district court held that VoteVets had standing, *VoteVets Action Fund v. Dep't of Veterans Affairs*, 414 F. Supp. 3d 61, 67-68 (D.D.C. 2019), but that it failed plausibly to allege (1) that the Council had "the structure required to be an advisory committee under FACA," *id.* at 70, and (2) that the Council was "established" or "utilized" by the federal government, *id.* at 68-73.

On the question of establishment, the court held that President-elect Trump's "off-the-cuff comments" at a press conference "hardly reflect the kind of formal, affirmative steps required to establish an advisory committee." *Id.* at 70. It also held that the facts "suggest[ed] that the three men—not President Trump or the Department—were the ones who took the initiative to organize themselves," which the district court held undercut any reasonable inference that the President selected the members. *Id.*

As for the "utilized" inquiry, the court acknowledged that VoteVets had plausibly alleged "that the alleged *advisory committee* exercised influence . . . over the *agency*." *Id.* at 72. But it held that "for FACA purposes, it is the amount of influence that the *agency* exercises over the *advisory committee* that matters." *Id.* The court reasoned that if the Department of Veterans Affairs was itself under the Council's control, then the Department could not have exerted enough influence on the Council to "utilize" the latter under FACA. *Id.*

VoteVets timely appeals, arguing that its allegations plausibly demonstrate that the Council had the form of an

advisory committee and was established or utilized by the federal government, so subject to the Act.

## ANALYSIS

As an initial matter, we agree with the district court that VoteVets has standing to sue. VoteVets claims an informational injury under FACA by pleading that the Council and VA failed to comply with the statute's disclosure and transparency requirements. *Id.* at 67-68; *see also Byrd v. EPA.*, 174 F.3d 239, 243 (D.C. Cir. 1999). And "[w]e assume, as we must at the pleading stage, that for purposes of standing the Council and its assorted subgroups are, as alleged, 'advisory committees' within the meaning of FACA § 3(2)." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 583 F.3d 871, 873 (D.C. Cir. 2009). Even though the Council is no longer meeting, *see* Oral Arg. Tr. 8, this case presents a live controversy because VoteVets seeks documents from the Council pursuant to 5 U.S.C. app. 2 § 10(b). *See Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 901 n.1; *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999).

We must decide whether the complaint plausibly alleges that the Council had the group structure of an advisory committee, and whether it was either established or utilized by the federal government. As already noted, FACA and its array of statutory requirements do not reach "every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Pub. Citizen*, 491 U.S. at 453. To count as an advisory committee, a group must have "in large measure, an organized structure, a fixed membership, and a specific purpose." *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 914. To be covered, such a committee must also be "established or utilized" by the federal government to provide "advice or recommendations for the President or one or more

agencies or officers of the Federal Government." 5 U.S.C. app. 2 § 3(2). To be "established" within the meaning of FACA, a committee must be created by the federal government. *Byrd*, 174 F.3d at 245. To be "utilized," it must be subject to the federal government's "actual management or control," even if it is not created by the government. *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994).

We review *de novo* the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lewis v. Pension Benefit Guaranty Corp.*, 912 F.3d 605, 609 (D.C. Cir. 2018). Because the district court dismissed VoteVets' case on the complaint alone, we must for purposes of this appeal assume the truth of the factual allegations. A plaintiff need not make "detailed factual allegations," but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Finally, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

We analyze requisite aspects of the standard in turn to explain our holding that VoteVets plausibly alleged that the Council had

the required structure and was, at a minimum, established by the federal government to advise the Department.

## A. The Group's Structure, Membership, and Purpose

"In order to implicate FACA, the President, or his subordinates, must create an advisory group that has, in large measure, an organized structure, a fixed membership, and a specific purpose." *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 914. To be an advisory committee, the group must also "render advice or recommendations, *as a group*, and not as a collection of individuals." *Id.* at 913. As described in VoteVets' complaint, the Council met those requirements.

The three men identified as comprising the Council jointly organized the health care executives' meeting with President-elect Trump at Mar-a-Lago in December 2016, Am. Compl. ¶¶ 2, 36(a). Trump announced the next month that a group led by Ike Perlmutter would help VA Secretary Shulkin "straighten out" the VA. *Id.* ¶¶ 28-29. The Council was to influence key VA personnel decisions and steer certain policy choices, including major decisions in areas of apparent personal or business interest to its members, such as private contracting for electronic medical records, electronic registries, or mobile apps. *Id.* ¶¶ 46-69.

After President Trump's inauguration, the Council met regularly and its members repeatedly described themselves as a "group" or "team" working together. *Id.* ¶ 74(b), (d); *see also id.* ¶ 74(o) ("we saw an opportunity to assist the Department of Veterans Affairs' leadership," "[w]e offered our counsel," and "[w]e provided our advice and suggestions"). According to VoteVets, Perlmutter, Sherman, and Moskowitz worked intensively as a group, including through in-person meetings, emails, and phone calls, *see* Am. Compl. ¶ 74(a)-(n). During meetings, conference calls, planning periods, and in spoken and

written communication, the trio operated and referred to themselves as a unit. Members of the Department, too, considered them a "team." *See id.* ¶¶ 69, 74(d) (then-Secretary Shulkin writing "I agree with Ike and the team"). The Council members consulted one another in advising the Department, jointly offering their recommendations. *See id.* ¶ 74(j) (Sherman edited Department's non-disclosure agreement to permit the Council members to consult with one another). Although, as the Department points out, the complaint acknowledges that the three members were not all invariably present at every Council meeting, *e.g., id.* ¶ 36(m), (r), (u); *see also* Appellees' Br. 17-18, the members present often took care to specify that they would fill in the others, *e.g.*, Am. Compl. ¶ 74(a), (j).

As described in the complaint, the Mar-a-Lago Council also had the "formality and structure" that we have held is "an important factor in determining the presence of an advisory committee" under FACA. *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 914. The Council had a "fixed membership" of Perlmutter, Moskowitz, and Sherman, Am. Compl. ¶¶ 2, 29, and "a specific purpose" of advising the Department of Veterans Affairs on "the essential decisions" relating to veterans' affairs, *id.* ¶ 74(o). Perlmutter led the Council. *Id.* ¶ 29. Those allegations suffice to identify the trio as forming an advisory group for purposes of FACA. Additional detail is not required at the pleading stage.

## B. The Government "Established" the Group

FACA defines the term "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group" that is "established or utilized by the President," "by one or more agencies," or by a statute or

reorganization plan. 5 U.S.C. app. 2 § 3(2)(A)-(C).[1] To be so "established," the committee must be "actually formed by the agency" or the President. *Byrd*, 174 F.3d at 245; *see Food Chem. News v. Young*, 900 F.2d 328, 332 (D.C. Cir. 1990) ("'[E]stablished' indicates 'a Government-formed advisory committee[.]'" (quoting *Pub. Citizen*, 491 U.S. at 460 & n.11)). In particular, the federal government must select the committee's members. If someone outside the federal government selects the members of an advisory committee, the committee is not "established" within the terms of FACA—although it might still be covered by the Act if it is "utilized" by the federal government. *See Byrd*, 174 F.3d at 246-47 (panel was not "a Government-formed advisory committee" because a private firm selected the committee's members from a list provided by the agency and included members not on the agency's list).

Here, VoteVets' allegations suffice to raise the inference that the federal government—either the Department of Veterans Affairs or President Trump himself—established the Council. As President-elect, Trump attended a meeting convened by Perlmutter, Moskowitz, and Sherman that was focused on improving and reforming the Department. Am. Compl. ¶ 36(a). A couple of weeks later, the President-elect publicly announced plans to set up a group to help the Secretary for Veterans Affairs and stated that Perlmutter was "very, very involved" with plans

---

[1] Committees "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government" or "created by the National Academy of Sciences or the National Academy of Public Administration" are not advisory committees under FACA. 5 U.S.C. app. 2 § 3(2). Likewise, government contractors are not advisory committees. *Food Chem. News v. Young*, 900 F.2d 328, 331 (D.C. Cir. 1990). Certain advisory committees are exempt from FACA's requirements, including those that are "established or utilized by" the CIA, Federal Reserve System, or Office of the Director of National Intelligence. 5 U.S.C. app. 2 § 4(b)(1)-(3).

to improve the Department. *Id.* ¶ 36(b). Perlmutter, Moskowitz, and Sherman then met with Shulkin the next month for a "[g]roup meeting." *See id.* ¶ 36(c)-(d). For at least a year and a half thereafter, the three men worked together to advise the Department on a variety of topics. Among other things, they recommended that the Department run a public awareness campaign about veteran suicide, *id.* ¶ 45, develop a mobile application based on one built by Moskowitz, *id.* ¶¶ 46-60, create a medical device registry, *id.* ¶¶ 61-63, contract with a private firm to overhaul its electronic health records system, *id.* ¶¶ 64-67, and privatize some VA health services, *id.* ¶¶ 68-69. Those allegations are sufficient "factual content" for "the court to draw the reasonable inference that," in response to the President's own request or by the Department in line with the President-elect's expressed intention, an advisory committee including the three men was established to advise the Department of Veterans Affairs. *Iqbal*, 556 U.S. at 678.

The Department urges us to draw different inferences from the above facts. It asserts that President-elect Trump's announcement evinced only a broad intention to seek input on veterans' affairs from various parties, including healthcare executives and hospitals, not an intention to establish the particular three-member Council. Appellees' Br. 13-14. As the Department reads it, the complaint does not identify an advisory committee convened by the President (or the Department), but describes only how Perlmutter, Moskowitz, and Sherman took it upon themselves to offer advice. *Id.* at 14-15. However plausible it might be that the President-elect's remarks at his January 2017 press conference referred to a different group of professionals, or that the members themselves formed the Council and were not selected by anyone in the federal government, the allegations plausibly support VoteVets' claim that the President or other government officials formed the Council.

Nor is it dispositive that the President-elect mentioned only Perlmutter, not Sherman or Moskowitz, by name in his January 2017 press conference; VoteVets has alleged other facts, such as Sherman and Moskowitz's Mar-a-Lago connections to President Trump, and the President-elect's earlier meeting with all three men, that suggest that the President-elect selected each of them. *See* Am. Compl. ¶¶ 31, 36(a). The existence of a plausible alternative—even one that may "prove to be . . . true"—"does not relieve defendants of their obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Banneker Ventures, LLC*, 798 F.3d at 1129. Discovery may show that one of the government's alternate explanations is in fact correct. But it may also vindicate VoteVets' theory, and "our role is not to speculate about which factual allegations are likely to be proved after discovery." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).

Finally, the government need not take any formal steps to "establish" a FACA advisory committee. Appellees do not dispute that the role of the government in creating an advisory committee and selecting its members may be shown by circumstantial evidence. Where direct evidence such as a formal letter or express public announcement on the government's part establishing an advisory committee is available, it typically suffices. *Cf. Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 5 (D.D.C. 2018) (Executive Order establishing a council); *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 218 (D.D.C. 2017) (team of advisors announced by initiation letter). But there is no requirement that government officials act with any particular formality to "establish" an advisory committee as a source of advice. *See Pub. Citizen*, 491 U.S. at 461 ("[W]hen an officer brings together a group by formal or informal means, . . . such group

is covered by the provisions of [FACA]." (quoting S. Rep. No. 92-1098, at 8 (1972))).

No contrary implication should be drawn from our observation that "form is a factor" in assessing whether a group operates with the "organized structure, . . . fixed membership, and . . . specific purpose" required to qualify as an advisory committee at all. *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 914 ("the formality and structure of the group" is "an important factor in determining the presence of an advisory committee"). Whether the working groups at issue in *Association of American Physicians and Surgeons, Inc.* had been "established" by the government was unquestioned. *Id*. at 903. The distinct, disputed issue that called for record development on remand in that case was whether those groups—admittedly established by the government "with a good deal of formality"—might nonetheless lack the structure required of a FACA advisory committee, operating instead more like a "crowd," "horde," or other "collection of individuals who do not significantly interact with each other." *Id*. at 914-15. Formality was required on that issue, not on the separate question whether the government had "established" the group.

At the current stage, we accept that, shortly after the President-elect announced in January 2017 his intent to set up a group of healthcare business leaders to advise the Department of Veterans Affairs, such a group was established at governmental behest. *See* Appellant's Br. 36-37.

\* \* \*

Because we hold that the complaint states a FACA claim based on the alleged advisory committee having been "established" by the President, possibly together with the agency, we need not also reach VoteVets' alternative theory

that the group was "utilized" by the government. We neither embrace nor reject the district court's holding that the government did not "utilize" the Council, and that ruling is now vacated in any event. We do not decide whether a committee that goes beyond working under the federal government's management or control, and instead controls the agency it advises, is "utilized" by the government within the meaning of FACA, and it appears that no other court has addressed the issue. Our holding that VoteVets has pleaded sufficient facts to survive a motion to dismiss allows the issues—whether the group was structured as an advisory committee within the meaning of FACA, and whether it was "established or utilized" by the government—to play themselves out in the district court through discovery and summary judgment or trial.

For the foregoing reasons, we reverse the district court's dismissal of VoteVets' claims and remand for further proceedings consistent with this opinion.

*So ordered.*