# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 5, 2021          Decided April 20, 2021

No. 20-7063

JOSEPH V. FISHER,
APPELLANT

v.

PENSION BENEFIT GUARANTY CORPORATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01275)

---

*Alison S. Gaffney* argued the cause for appellant. With her on the briefs were *David S. Preminger*, *George M. Chuzi*, and *Lynn Lincoln Sarko.*

*Kenneth J. Cooper*, Assistant General Counsel, Pension Benefit Guaranty Corporation, argued the cause for appellee. With him on the brief was *Mark R. Snyder*, Attorney.

Before: ROGERS and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

2

ROGERS, *Circuit Judge*:  This case concerns the Pension Benefit Guaranty Corporation's ("PBGC") 2016 denial of appellant's request for lumpsum payment of his pension benefits.  After the district court vacated PBGC's 2011 denial of the same request, PBGC's 2016 remand decision featured a new rationale for denial based on 29 C.F.R. § 4044.4(b).  Because PBGC's 2016 decision was a new agency action, the court reviews PBGC's rationale and now concludes that appellant's challenges to this rationale lack merit.  Accordingly, we affirm the district court's grant of summary judgment to PBGC.

## I.

### A.

Among the "principal purposes" of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, 29 U.S.C. § 1001 *et seq.*, "was to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *PBGC v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984) (citing *Nachman Corp. v. PBGC*, 446 U.S. 359, 361–62 (1980)).  "Toward this end, Title IV of ERISA, 29 U.S.C. § 1301 *et seq.*, created a plan termination insurance program, administered by the Pension Benefit Guaranty Corporation (PBGC), a wholly owned Government corporation within the Department of Labor, § 1302." *Id*.  This plan guarantees a class of "nonforfeitable benefits," 29 U.S.C. § 1322(a), "reimbursing eligible participants or beneficiaries when a guaranteed plan terminates without sufficient funds," *Davis v. PBGC*, 734 F.3d 1161, 1164 (D.C. Cir. 2013).

"If an employer wishes to terminate a plan whose assets are insufficient to pay all benefits, the employer must

demonstrate that it is in financial 'distress.'" *PBGC v. LTV Corp.*, 496 U.S. 633, 639 (1990); *see* 29 U.S.C. § 1341(c). To terminate under a "distress termination," the employer must provide a "60-day advance notice of intent to terminate" ("NOIT") to all affected parties, including plan participants and PBGC. 29 U.S.C. § 1341(c)(1)(A). If PBGC determines that the plan lacks sufficient assets to satisfy its pension obligations, "PBGC becomes trustee of the plan, taking over the plan's assets and liabilities." *LTV Corp.*, 496 U.S. at 637; *see* 29 U.S.C. § 1342(c). "As trustee, the PBGC administers the plan—i.e., determines who is entitled to benefits, *see* 29 U.S.C. § 1342(d), and acts as a fiduciary with respect to the plan, *see id.* §§ 1342(d)(3), 1002(21)." *Davis*, 734 F.3d at 1165.

ERISA requires plan administrators to allocate the plan's assets among participants pursuant to six categories, which establish a descending order of priority. *See* 29 U.S.C. § 1344; *Lewis v. PBGC*, 912 F.3d 605, 607 (D.C. Cir. 2018). As relevant, administrators of plans entering distress termination must pay "benefits attributable to employer contributions . . . only in the form of an annuity," 29 U.S.C. § 1341(c)(3)(D)(ii)(II), during the period "commencing on the date on which the plan administrator provides a notice of distress termination" to PBGC and ending on the date on which PBGC issues a notice determining the plan's eligibility for distress termination, *id.* § 1341(c)(3)(D)(i)(I). PBGC's regulation implementing 29 U.S.C. § 1344 further prohibits a "distribution, transfer, or allocation of assets to a participant" that contravenes the six-category priority scheme and is "made in anticipation of plan termination." 29 C.F.R. § 4044.4(b). To determine whether a distribution has been made "in anticipation of plan termination," the regulation states that PBGC "will consider all of the facts and circumstances including — (1) Any change in funding or operation procedures; (2) Past practice with regard to employee requests

for forms of distributions; (3) Whether the distribution is consistent with plan provisions; and (4) Whether an annuity contract that provides for a cutback based on [specified] guarantee limits . . . could have been purchased from an insurance company." *Id*.

**B.**

Appellant is a former executive of The Penn Traffic Company ("Penn Traffic") who earned a pension under The Penn Traffic Company Cash Balance Pension Plan ("the Plan"), which is subject to ERISA. In May 2003, Penn Traffic filed for bankruptcy. A few months later, in August 2003, appellant resigned and filed an application for retirement benefits pursuant to the Plan, electing to receive his benefits in the form of a single lumpsum payment. In September 2003, Penn Traffic's Board of Directors voted to terminate the Plan. In October 2003, the Plan's Administrative Committee informed appellant that, given the Plan's impeding termination, his request for lumpsum payment had been denied. PBGC received the Plan's formal NOIT in November 2003 and became the Plan's trustee in February 2005.

In December 2009, PBGC sent appellant a benefit determination letter, explaining its calculation of a monthly annuity benefit. The next month, appellant appealed PBGC's determination that his benefit was payable as a monthly annuity rather than a lumpsum. In September 2011, the PBGC Appeals Board denied appellant's appeal, primarily relying on Policy 5.4-9, Section D.1 of PBGC's Operating Policy Manual.

Appellant filed an action in federal district court challenging the 2011 decision. *See* 29 U.S.C. § 1303(f)(1). The district court held that the 2011 decision failed to adequately justify its denial of appellant's request for lumpsum payment. *See Fisher v. PBGC*, 151 F. Supp. 3d 159, 161

(D.D.C. 2016). It reasoned that the PBGC Appeals Board failed to consider whether the application of Policy 5.4-9 to appellant's request was consistent with the text of ERISA, and "wholly ignore[d]" whether and how 29 C.F.R. § 4044.4 might apply to appellant's request. *Id*. at 166–67. The district court therefore vacated the 2011 decision and remanded to PBGC for further proceedings. *Id*. at 168.

In July 2016, the PBGC Appeals Board again denied appellant's lumpsum request. This time its reasoning focused on 29 C.F.R. § 4044.4 rather than Policy 5.4-9. Specifically, it concluded that § 4044.4(b), which prohibits certain lumpsum distributions "in anticipation of plan termination," was "a valid exercise of PBGC's rulemaking authority" and applied to appellant's lumpsum request. PBGC Appeals Board, Remand 2016-0147, Joseph V. Fisher, Case No. 200185, at 3–4 (July 22, 2016) (hereinafter, 2016 Remand Decision). Although stating that "PBGC Policy 5.4-9 further supports the denial of [appellant's] lump-sum payment request," it did not follow the district court's remand instructions to explain how the application of Policy 5.4-9 to appellant's request was consistent with ERISA. *Id*. at 30.

In April 2019, appellant amended his complaint to seek judicial review of the 2016 Remand Decision. Concluding that the 2016 decision properly relied on 29 C.F.R. § 4044.4(b) to deny appellant's lumpsum request, the district court granted summary judgment to PBGC. *See Fisher v. PBGC*, 468 F. Supp. 3d 7, 28 (D.D.C. 2020). Appellant appeals, and our review is *de novo*. *Allied Pilots Ass'n v. PBGC*, 334 F.3d 93, 97 (D.C. Cir. 2003).

## II.

As a threshold matter, appellant maintains that the court must disregard the 2016 Remand Decision's reasoning based on 29 C.F.R. § 4044.4(b). In his view, the district court erred in remanding to PBGC in the first instance, and even if remand was appropriate, the PBGC Appeals Board's 2016 decision was not a new agency action and therefore its reliance on § 4044.4(b), which the Appeals Board's 2011 decision did not mention, constitutes an impermissible *post hoc* rationalization. Neither contention has merit.

Ordinarily, "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also LTV Corp.*, 496 U.S. at 654; *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943). In rare circumstances, when "a remand would be futile on certain matters as only one disposition is possible as a matter of law," courts "retain and decide the issue." *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992). Here, the district court concluded that PBGC's application of Policy 5.4-9 to appellant's lumpsum request was "in at least some tension with" ERISA's text, while acknowledging that PBGC's interpretation of ERISA "may even be right." *Fisher*, 151 F. Supp. 3d at 167. Concluding that the PBGC Appeals Board's 2011 decision did not adequately explain how its application of Policy 5.4-9 was consistent with ERISA, the district court followed the "proper course" by remanding to PBGC. *Fla. Power & Light Co.*, 470 U.S. at 744.

"[A] court may remand for the agency to do one of two things." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020). If the agency

chooses to offer "a fuller explanation of the agency's reasoning *at the time of the agency action*," it may not provide new reasons for that action. *Id.* at 1907–08 (quoting *LTV Corp.*, 496 U.S. at 654). Alternatively, if the agency chooses to "'deal with the problem afresh' by taking *new* agency action," it is "not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id*. at 1908 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).

Therefore, the district court's remand presented the PBGC Appeals Board with a choice: either rest on its 2011 decision while elaborating on its prior reasoning, or issue a new decision featuring additional reasons absent from its 2011 decision. Contrary to appellant's view, the PBGC Appeals Board chose the second option. Although its 2016 decision claimed to "modif[y]" the 2011 decision by "more fully responding" and "providing a revised and more complete explanation," its substance made clear that it was a new agency action. *See* 2016 Remand Decision at 1, 30. The 2016 decision was styled as a "final agency action" and did not purport to justify a predetermined outcome. *See id*. at 1, 31. Rather, it reexamined the administrative record and dealt with appellant's appeal "afresh." *Regents*, 140 S. Ct. at 1908 (quoting *Chenery Corp.*, 332 U.S. at 201).

That PBGC did not give appellant the opportunity to submit a new appeal-letter brief or exhibits is immaterial. *See* Appellant Br. 31. The PBGC Appeals Board reasonably relied on the administrative record associated with appellant's 2010 appeal letter insofar as the issues identified by the district court in remanding had been fully briefed. This record included appellant's 2010 appeal-letter brief to the PBGC Appeals Board and two appeal letters to Penn Traffic, all of which stated appellant's position on 29 U.S.C. § 4044.4(b). Appellant acknowledges that the factual record before the PBGC Appeals

Board was fully developed and suggests no procedural irregularities. *See* Appellant Br. 17, 21. Moreover, he provides no authority for his proposition that the PBGC Appeals Board was required to consider a renewed appeal. *See id*. 30–31. In these circumstances, the court accepts that PBGC complied with the procedural requirements for new agency action. *See Regents*, 140 S. Ct. at 1908.

## III.

Appellant contends that PBGC's reliance on 29 C.F.R. § 4044.4(b), even if properly before the court, does not support denial of his lumpsum request. First, he maintains that § 4044.4(b), which prohibits certain lumpsum distributions "in anticipation of plan termination," is *ultra vires* because it contravenes the plain text of ERISA, 29 U.S.C. § 1341(c), which prohibits only post-NOIT lumpsum distributions. *See* Appellant Br. 46–53. Second, he maintains that § 4044.4(b), by its own terms, was inapplicable to his request. *See id*. 54–56. Appellant's contentions lack merit.

## A.

To determine whether § 4044.4(b) is consistent with ERISA, the court applies the familiar *Chevron* two-step framework. *See LTV Corp.*, 496 U.S. at 647–52; *Davis v. PBGC*, 571 F.3d 1288, 1293 (D.C. Cir. 2009). Under this framework, the court first considers "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43. Otherwise, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the

agency's answer is based on a permissible construction of the statute." *Id*. at 843.

At *Chevron* step one, "employing traditional tools of statutory construction," *id.* at 843, n.9, the court asks whether Congress "has unambiguously foreclosed the agency's statutory interpretation," *Catawba Cty. v. EPA*, 571 F.3d 20, 35 (D.C. Cir. 2009). We "begin with the language employed by Congress." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (internal citation omitted). As relevant, ERISA provides that the plan administrator must pay benefits "only in the form of an annuity" "for the period commencing on the date on which the plan administrator provides a notice of distress termination." 29 U.S.C. §§ 1341(c)(3)(D)(i)–(ii). By contrast, it is silent with respect to pre-NOIT lumpsum distributions. Invoking the *expressio unius* canon, appellant principally contends that § 1341(c)'s prohibition on post-NOIT lumpsum distributions reflects Congress' unambiguous intent to preclude PBGC from denying pre-NOIT lumpsum distributions. *See* Appellant Br. 46–50; Appellant Reply Br. 16. In an administrative setting, however, "the contrast between Congress' mandate in one context with its silence in another suggests not a prohibition but simply a decision *not to mandate* any solution in the second context, i.e., to leave the question to agency discretion." *Cheney R. Co. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990). "Silence, in other words, may signal permission rather than proscription." *Catawba Cty*., 571 F.3d at 36. That § 1341(c) addressed post-NOIT lumpsum distributions, therefore, does not "suffice[] for the direct answer that *Chevron* step one requires." *Id*. (internal quotation marks and citation omitted).

Appellant further contends that by enacting § 1341(c) after PBGC promulgated 29 C.F.R. § 4044.4(b), "Congress spoke subsequently and more specifically to the timing of restrictions

on lump-sum payments with respect to distress termination procedures." Appellant Br. 52. Congress, however, is "presumed to preserve, not abrogate, the background understandings against which it legislates." *United States v. Wilson*, 290 F.3d 347, 356 (D.C. Cir. 2002). Appellant fails to point to evidence suggesting that Congress intended for § 1341(c) to abrogate § 4044.4(b). In fact, nothing in ERISA's purpose, structure, or legislative history indicates that Congress intended to limit PBGC's authority to regulate pre-NOIT lumpsum distributions. Absent evidence of clear Congressional intent, § 4044.4(b) survives *Chevron* step one.

Proceeding to *Chevron* step two, the court asks whether 29 C.F.R. § 4044.4(b) is a "permissible construction" of ERISA. *Chevron,* 467 U.S. at 843. Citing the district court's analysis, PBGC maintains that § 4044.4(b) promotes ERISA's purpose "by minimizing the possibility of abuse that could occur during the time period when plan termination was anticipated but had not yet occurred." Appellee Br. 27 (citing *Fisher*, 468 F. Supp. 3d at 26); *see also* Allocation of Assets in Non-Multiemployer Plans, 46 Fed. Reg. 9480, 9481 (Jan. 28, 1981). Appellant offers no contrary arguments at *Chevron* step two, and the court finds none. Thus, § 4044.4(b) easily satisfies our "highly deferential" review at this step. *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 667 (D.C. Cir. 2011).

**B.**

As to appellant's contention that 29 C.F.R. § 4044.4(b) is inapplicable to his lumpsum request, the court applies arbitrary and capricious review. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. PBGC*, 707 F.3d 319, 323–24 (D.C. Cir. 2013). To survive this "fundamentally deferential" review, "an agency action must be the product of reasoned

decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012).

Appellant contends that in determining his lumpsum request was made "in anticipation of plan termination," the PBGC's 2016 decision misapplied three of the four factors enumerated in § 4044.4(b). In his view, the first factor — "[a]ny change in funding or operation procedures" — speaks to changes in funding procedures, not funding status. *See* Appellant Br. 55. That interpretation is not only grammatically unnatural but also "illogical." *Fisher*, 468 F. Supp. 3d at 28. Indeed, appellant fails to fault PBGC's more sensible interpretation or explain why a plan's deteriorating funding status does not signal its impending termination. As to the second factor — past practice — appellant points out that "the Plan paid lump sum distributions to other plan participants both before *and after* it denied [his] request." Appellant Reply Br. 20. PBGC's 2016 decision reasonably explained, however, that appellant "was in a different situation from other Plan participants" due to the "substantial benefit increase he received under the Plan's Second Amendment," which applied only to him. 2016 Remand Decision at 22. Finally, even if the third factor — consistency with plan provisions — favored appellant, PBGC's 2016 decision correctly explained that "it is unnecessary for all four of the listed circumstances to be satisfied." *Id.* After all, 29 C.F.R. § 4044.4(b) instructs PBGC to "consider all facts and circumstances, including," but not limited to, the four enumerated factors. Here, the PBGC Appeals Board marshaled ample uncontested facts supporting its conclusion that the Plan's termination was likely at the time of appellant's request. *See* 2016 Remand Decision at 18–20; *see also Fisher*, 468 F. Supp. 3d at 27–28. On this record, appellant fails to show that PBGC acted arbitrarily or capriciously.

In sum, the court concludes that 29 C.F.R. § 4044.4(b) is valid and that the PBGC Appeals Board reasonably applied § 4044.4(b) to deny appellant's lumpsum request. Furthermore, because fiduciaries must act in accordance with the terms of plan documents only "insofar as such documents and instruments are consistent with the provisions of" ERISA, 29 U.S.C. § 1104(a)(1)(D), Penn Traffic fulfilled its fiduciary duties by denying appellant's request in compliance with § 4044.4(b). *See Fisher*, 468 F. Supp. 3d at 21, n.6; *see also* 2016 Remand Decision at 29. Therefore, the court need not address appellant's contentions that Penn Traffic's handling of his lumpsum request was inconsistent with the Plan's terms. *See* Appellant Br. 56–62. Accordingly, the court affirms the grant of summary judgment to PBGC.